Jo Anne ISAJEWICZ, Plaintiff,

v.

**BUCKS COUNTY DEPARTMENT OF COMMUNICATIONS, et al., Defendants.**

Civ. A. No. 92–5580.

United States District Court, E.D. Pennsylvania.

Feb. 25, 1994.

*MEMORANDUM*

ROBERT F. KELLY, District Judge.

 Plaintiff, Jo Anne Isajewicz, brought this action against Defendants, the Bucks County Department of Communications and its Director, Martin Ficke ("Bucks County Defendants"); Peter Kostmayer, former member of the United States House of Representatives for the Eighth Congressional District of Pennsylvania[1]; and Carmen Raddi, former Township Manager for Bensalem Township. In her Complaint, Plaintiff alleges that Defendants terminated or conspired to terminate her employment at the Bucks County Department of Communications in violation of 42 U.S.C. § 1983 and § 1985(3) because she is a member of the Republican Party.[2]

Before the Court are Defendant Kostmayer's Motion for Summary Judgment, Bucks County Defendants' Motion for Judgment on the Pleadings or for Summary Judgment, and Defendant Raddi's Motion for Summary Judgment. For the reasons that follow, all motions are granted.

## I. *FACTS*

While working on December 9, 1990, Plaintiff received a call from a Bucks County resident, Scott Porter, who reported that he found a lost dog and requested the police to pick it up from his house. A few moments later, Mr. Porter called back regarding the lost dog. Finding that the dispatcher was

unhelpful to Mr. Porter, Mrs. Porter and her six year old daughter sent letters to Congressman Kostmayer, expressing dissatisfaction with the handling of the phone call and stating that the dispatcher who handled the call was *"very* rude." Letter of Ms. Porter to Kostmayer (emphasis in original).

On December 14, 1990 a letter was sent from Kostmayer's office to Carmen Raddi, who was believed to be the Bensalem Township Manager. Kostmayer enclosed copies of the Porters' letters and asked Raddi to "look into the matter." By letter dated January 11, 1991, Francis Friel, Director of the Bensalem Police Department, informed Kostmayer's office that the dispatcher was under the control of Bucks County and not Bensalem Township. Therefore, Director Friel forwarded the information to the proper Bucks County agency.

Plaintiff claims that shortly thereafter, she was charged with violating a department regulation that requires all calls to be processed in a polite manner. This was Plaintiff's third charge of violating department policy since August, 1990. Because this was Plaintiff's third violation within one year, she was terminated.

Plaintiff filed a grievance concerning her termination pursuant to her union's agreement with Bucks County. Plaintiff's grievance was submitted to binding arbitration and heard on July 23, 1991. By opinion dated July 30, 1991, the decision to dismiss Plaintiff was upheld. Plaintiff then filed the instant suit.

## II. *STANDARD*

 Pursuant to Rule 56(c), summary judgment is proper "if there is no genuine

---

1. Kostmayer was a member of the House of Representatives at all times relevant to this action.

2. In order to succeed on a claim under 42 U.S.C. § 1983, Plaintiff must prove the following elements: "(1) the conduct complained of must be committed by a person acting under color of state law and, (2) it must have deprive the plaintiff of a right or privilege secured by the Constitution or the law of the United States." *Riley v. Jeffes,* 777 F.2d 143, 145 (3d Cir.1985). A claim under 42 U.S.C. § 1985(3) is different from a § 1983 claim because there is no requirement of state action under § 1985(3). However, Plaintiff must prove the following elements to be success-

ful under 42 U.S.C. § 1985(3): 1) a conspiracy; 2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; 3) some act in furtherance of the conspiracy committed or caused to be committed by the conspirators; and 4) that Plaintiff was injured in her person or property, or was deprived of having and exercising any right or privilege of a citizen of the United States. *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971); *Bethel v. Jendoco Constr. Corp.,* 570 F.2d 1168 (3d Cir. 1978); *Goussis v. Kimball,* 813 F.Supp. 352, 358–59 (E.D.Pa.1993).

issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Id.* If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552 (1986); *Wisniewski v. Johns-Manville Corp.,* 812 F.2d 81, 83 (3d Cir.1987).

### III. *CONGRESSMAN KOSTMAYER'S MOTION*

The basis for Plaintiff's claim against Kostmayer is that, he, "acting as a private citizen but using his Congressional letterhead to add 'clout'" wrote a letter to Defendant Raddi asking him to "look into the matter." Complaint at ¶ 20. The Complaint goes on to state:

21. Plaintiff believes, and therefore alleges, that this letter was produced for public consumption and was deliberately left brief and vague to conceal the formation of the illegal conspiracy which followed. Plaintiff believes, and therefore alleges, that Congressman Kostemayer [sic], personally or through agency, initiated one or more communications with Carmen Raddi or his agents to select a Republican employee of the county to serve as a 'sacrificial lamb' to appease a Democratic constituent and for other political gain. Plaintiff believes, and therefore alleges, that all Democratic employees and patronage appointees were exempted from consideration as the appropriate aforementioned 'scapegoat' by virtue of their value to the Democratic party.

22. Plaintiff believes, and therefore alleges, that Carmen Raddi, personally or by agency, acted upon this conspiracy with Congressman Kostemayer [sic] by joining one or more additional persons into the conspiracy, including Defendant Martin Ficke, whose participation was necessary to select the scapegoat Republican and authorize said person's termination from employment.

Complaint at ¶¶ 21–22.

■ In order to show a conspiracy, Plaintiff must establish an agreement or meeting of the minds among the conspirators. *Caldeira v. County of Kauai,* 866 F.2d 1175 (9th Cir.1989), *cert. denied,* 493 U.S. 817, 110 S.Ct. 69, 107 L.Ed.2d 36 (1989). Kostmayer contends that he is entitled to summary judgment because there is no evidence of an agreement to terminate Plaintiff.

■ As to the letter sent to Raddi, Kostmayer contends that it is nothing more than a form letter that was generated by his computer system and not a part of any conspiracy. Kostmayer's district office manager, Judith Braunston, presented an affidavit stating that she works with the constituent case tracking software program, MailAide, which allows Kostmayer's office to easily track, respond and report on constituent casework.[3] According to Braunston, she received the letters from the Porters and input all relevant information into the system. The computer program then generated a form letter to the proper agency, which in this instance was Bensalem Township, along with a summary report of the case, which is called a buckslip.

Kostmayer also presented two buckslips pertaining to the Porter's case. The first buckslip shows that the case was opened on December 14, 1990, which is the date of Kostmayer's letter to Raddi. The second buckslip shows that a response was received on January 11, 1990, which is the date that Kostmayer's office received the letter from Friel, and the case was marked as closed. Furthermore, Kostmayer presented a letter

---

**3.** Due to the increase in constituent casework that members of Congress are required to handle, such a program is a necessity. According to Ms. Braunston, Kostmayer's office handles approximately 4,000 constituent cases per year.

dated August 15, 1989 that was sent to another constituent and is identical in its content to the letter that was sent to Raddi.

Moreover, Kostmayer's letter dated December 14, 1990 was not even sent to the appropriate person or agency. The letter was addressed to Carmen Raddi, Bensalem Township Manager. However, Raddi was not even the Bensalem Township Manager at the time the letter was sent. Raddi has presented an affidavit in support of his own motion stating that he had left the position of Bensalem Township Manager in December, 1989, almost one year prior to the events in this case. Furthermore, the letter from Director Friel to Kostmayer's office stated that the Bucks County dispatcher was not even a member of his agency, but rather she worked for the Bucks County Department of Communications.

Kostmayer further contends that there could not be an agreement to terminate Plaintiff because he was completely unaware of this matter until the Complaint was filed in federal court in September, 1992. Braunston stated that routine constituent matters such as this are handled by the staff without Kostmayer's knowledge. She further stated that she did not inform anyone about the Porters' case until September of 1992, when she was served with the Complaint. At that point, Braunston contacted her supervisor, John Seager [4], in Washington and informed him that a complaint was served concerning a constituent matter. Seager then informed Kostmayer about the complaint. This was the first that Seager or Kostmayer had learned about the Complaint.

 Plaintiff has presented no evidence in support of her claims against Kostmayer.[5] Plaintiff's response is that the Court's previous Order denying Kostmayer's motion to dismiss is res judicata on the instant Motion for Summary Judgment.[6] Plaintiff is mistaken. The standard that the Court must apply in a motion for summary judgment is different than that which is applied in a motion to dismiss. The motion for summary judgment requires Plaintiff to present evidence that there does exist a genuine issue of material fact, and Plaintiff may not rely solely on the pleadings. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 83 (3d Cir.1987). However, in a motion to dismiss, the plaintiff need not present any evidence, but may rely exclusively on her pleadings.

The only evidence before the Court is that the letter sent to Raddi was a computer generated form letter, Kostmayer knew nothing about the Porters' complaint and that there were no communication between Defendants. Plaintiff's conclusory statements in her Complaint that she was terminated because of her political affiliation are insufficient as a matter of law to support her claim. *Liotta v. Springdale,* 985 F.2d 119 (3d Cir.1993). She is required to present evidence in support of her claim, and this she has not done. Therefore, summary judgment is properly entered in favor of Kostmayer.

 Kostmayer further argues that he is entitled to official immunity. An official is immune from suit if his actions were within the scope of his duties and did not violate any clearly established constitutional or statutory rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). When the immunity defense is raised, it is the defendant's burden to establish that they are entitled to such immunity. *Ryan v. Burlington County,* 860 F.2d 1199, 1204 n. 9 (3d Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). An official may be entitled to qualified immunity if it is shown that the allegedly unlawful action does not violate laws that were clearly established at the time of the conduct. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

 In the matter at hand, Kostmayer was acting in his official capacity when a

---

4. Mr. Seager is also Kostmayer's Chief of Staff.

5. Discovery in this matter ended on October 25, 1993. None of the parties in this case took any discovery.

6. This is Plaintiff's response to all of the motions presently before the Court.

letter was sent from his district office to Bensalem Township in response to a constituent complaint. *Karchin v. Metzenbaum,* 587 F.Supp. 563, 566 (N.D. Ohio, 1983). Moreover, Plaintiff has not cited any law which prohibits a member of Congress from addressing constituent complaints. In fact, it appears that constituent casework is an increasingly important aspect of congressional duties. Klonoff, *The Congressman as Mediator Between Citizens and Government Agencies: Problems and Prospects,* 16 Harv. J. On Legis. No. 3, 701–735 (1979). As such, there is no "clearly established" law that prohibits a member of Congress from addressing constituent complaints. Therefore, Kostmayer did not violate a clearly established constitutional or statutory right and is entitled to qualified immunity.

## IV. BUCKS COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Bucks County Defendants contend that they are entitled to summary judgment because Plaintiff failed to show the deprivation of any constitutional right. Plaintiff, on the other hand, contends that she was terminated because of her political affiliation, deprived of her job without due process and that the County improperly pressured the arbiter to uphold her termination.

■ An employer may avoid liability by showing that an employee would have been discharged for reasons unrelated to her political affiliation. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Jones v. Dodson,* 727 F.2d 1329 (4th Cir.1984). According to the policy of the Department of Communications, Plaintiff could be terminated if she violated certain regulations three times within a one year period. The incident involving the Porters was Plaintiff's third disciplinary action since August, 1990.

When Plaintiff was terminated, the matter was submitted to arbitration in accordance with her union agreement. The arbiter upheld the dismissal of Plaintiff because the arbiter found that she was terminated for just cause and in accordance with department policy. While Plaintiff alleges that the County in some manner pressured the arbiter to uphold her termination, she has not presented any evidence in support of this claim, as she is required to do in order to withstand a motion for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Plaintiff may not simply rely on her pleadings at this stage of the proceedings. *Id.* The only evidence before the Court is that Plaintiff was terminated in accordance with department policy, that her political affiliation was not taken into consideration and that the arbiter upheld her dismissal without being unduly influenced by the County in any manner. As such, summary judgment is properly entered in favor of the Bucks County Defendants.

■ Plaintiff also alleges that she was deprived of her job without due process of law. Constitutionally required due process for terminating an employee consists of oral or written notice of the charges, an explanation of the evidence and an opportunity to present her story. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Once again, there is simply no evidence to suggest that Plaintiff was terminated without sufficient due process of law.

■ Moreover, Plaintiff was provided with a constitutionally adequate forum in which to litigate the finding by the arbiter that her termination was proper, and she is required to appeal the determination through that forum. *Gniotek v. Philadelphia,* 630 F.Supp. 827 (E.D.Pa.), *aff'd,* 808 F.2d 241 (3d Cir.1986), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987). Plaintiff's union agreement provided her with a grievance procedure, including arbitration and the right to appeal the matter through state proceedings. However, after the arbitration award, Plaintiff filed the instant complaint in federal court and did not raise these matters in available and constitutionally adequate state proceedings. Therefore, this Court is not going to review the determination by the arbiter because Plaintiff has failed to use all properly available state proceedings. *Id.*

As such, summary judgment is granted in favor of the Bucks County Defendants.

### V. *CARMEN RADDI'S MOTION FOR SUMMARY JUDGMENT*

In her Complaint, Plaintiff alleges that Carmen Raddi was Township Manager of Bensalem Township during the relevant time period and that he was involved in the conspiracy with Kostmayer and Ficke to have her terminated because she was a member of the Republican party. Raddi contends that he is entitled to summary judgment because he was not the Township Manager of Bensalem Township during the relevant time period, and as such could not have participated in such a conspiracy.

According to Raddi, he was Bensalem Township Manager from July 21, 1986 to December 31, 1989, at which time Bensalem changed its form of government to a Mayor–Council system, and the position of Township Manager was eliminated. Raddi further contends that on January 2, 1990, he became Township Manager of another township, Bristol, a position which he holds to this day.

■ Moreover, Raddi denies that he had any communications with Kostmayer concerning Plaintiff's termination. The letter from Kostmayer to Raddi as Bensalem Township Manager was sent on December 14, 1990, almost one year after Raddi left that position and started working for Bristol Township. As is the case with the other motions, Plaintiff has not presented any evidence that Raddi was involved in the conspiracy in any manner. Because all of the evidence shows that Raddi was Township Manager of Bristol Township at the relevant times and that he had no connection with Bensalem or that he was involved in a conspiracy, summary judgment is granted.

### VI. *CONCLUSION*

Based on the foregoing reasons, I shall enter the following Order:

### *ORDER*

AND NOW, this 25th day of February, 1994, upon consideration of Defendant Kostmayer's Motion for Summary Judgment, Bucks County Defendants' Motion for Judgment on the Pleadings or for Summary Judgment, and Defendant Raddi's Motion for Summary Judgment, and all responses thereto, it is hereby ORDERED that:

1. Defendant Kostmayer's Motion for Summary Judgment is GRANTED;

2. The Bucks County Defendants' Motion for Summary Judgment is GRANTED;

3. Defendant Raddi's Motion for Summary Judgment is GRANTED;

4. The Bucks County Defendants' Motion for attorney fees is DENIED; and

5. The Clerk of Court is directed to list this case as closed.