**Homer Lee COLBERT,**

v.

**Paul J. ANGSTADT, et al.**

**No. CIV.A. 00–1480.**

United States District Court,
E.D. Pennsylvania.

April 24, 2001.

Andrew F. Erba, Williams & Cuker, Philadelphia, PA, for plaintiff.

Steven K. Ludwig, John C. Romeo, Fox Rothschild O'Brien & Frankel LLP, Philadelphia, PA, Michael C. Boland, La Manna & Swavely, Reading, PA, for Paul J. Angstadt, William M. Heim, Joel D. Avram, City of Reading, defendants.

Jeffrey N. German, German, Gallagher & Murtagh, Philadelphia, PA, A. James Johnston, Jonathan B. Sprague, Margret M. Hagar, Post & Schell, PC, Philadelphia, PA, for Rite Aid Corp., defendant.

Jeffrey N. German, German, Gallagher & Murtagh, Philadelphia, PA, for Atlantic Security Guards, Inc., defendant.

### MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are: (1) defendants the City of Reading's, Joel D. Avram's, William M. Heim's, and Paul J. Angstadt's (collectively, the "Municipal Defendants") Motion for Summary Judgment (Document No. 47); (2) plaintiff Homer Lee Colbert's ("Plaintiff" or "Colbert") Rule 37 Motion to Compel Discovery from the Municipal Defendants (Document No. 40); (3) Plaintiff's Rule 56(f) Motion (Document No. 48); (4) Plaintiff's Motion to File of Record the Table of Citations (Document No. 51); (5) Plaintiff's Motion to File Amended Certificate of Service (Document No. 55); (6) Plaintiff's Motion to Compel Defendant Rite Aid and Atlantic Security to Pay for the Deposition of the Plaintiff's Expert (Document No. 59); and the responses thereto. For the reasons set forth below, the court will: grant the motion for summary judgment; deny the motion to compel discovery as moot; deny the Rule 56(f) motion; grant the motion to file a table of citations; grant the motion to file an amended certificate of service; and deny the motion to compel payment as moot.

### I. BACKGROUND

In February 1999, Colbert, an African–American male, purchased a prescription from a Rite Aid store in Reading, Pennsylvania. (Am. Compl. ¶¶ 5 & 17.) As he left the store, the security alarm was triggered. *Id.* ¶¶ 14–16 & 23–25. Sam Cardy, a security guard employed by Atlantic Security Guards, Inc., ("Atlantic"), approached Colbert and asked him to return to the store. *Id.* ¶ 25; Colbert Dep. at 90–91 & 93. An altercation ensued between Cardy and Colbert where it is alleged that Colbert threw Cardy to the ground and left. (Colbert Dep. at 97.) Store employees contacted the police and defendant Officer Joel D. Avram responded. (Dep. of Officer Joel Avram ("Avram Dep.") at 53–55 & 68; Dep. of Theresa Hanson ("Hanson Dep.") at 19.) Officer Avram took information from the eye witnesses, returned to his office and prepared a warrant that ultimately resulted in Colbert's prosecution for assault and battery, disorderly conduct, and related offenses. Colbert was convicted before a District Justice and on appeal, the Common Pleas Court dismissed the case because of the failure of the District Attorney to produce certain witnesses. (Am. Compl. ¶ 45; Colbert Dep. at 50–51.)

On March 21, 2000, Colbert filed this civil rights action against Officer Avram, two City of Reading officials, Rite Aid Corporation ("Rite Aid") and Atlantic. He filed an Amended Complaint on August 11, 2000. On January 19, 2001, the Municipal

Defendants filed the instant motion for summary judgment.

## II. *LEGAL STANDARD*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a genuine issue of material fact is presented will be determined by asking if "a reasonable jury could return a verdict for the non-moving party." *Id.* In considering a motion for summary judgment, "[i]nferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992) (citation omitted).

## III. *DISCUSSION*

In his Amended Complaint, Plaintiff alleges that the Municipal Defendants: violated 42 U.S.C. § 1983 by filing criminal charges for assault, battery and disorderly conduct against him ("Third Legal Claim"); violated § 1985(3) by conspiring to do so ("Fourth Legal Claim"); and also violated § 1983 by failing to have adequate training and policies ("Second Legal Claim"). (Am.Compl. ¶¶ 62–70.) Colbert

further alleges that Officer Avram violated state law by arresting and detaining him without probable cause ("Fifth Legal Claim"). (Am.Compl. ¶ 71.) The Municipal Defendants assert that Colbert has not established any Constitutional violation or any evidence of a conspiracy. The Municipal Defendants further assert that Colbert was not arrested and that the Municipal Defendants acted properly at all times.

The court will first address Plaintiff's federal claims, and then his state claims.[1]

### A. *Plaintiff's Federal Claims*

### 1. The Filing of Criminal Charges Against Colbert

Plaintiff alleges that the Municipal Defendants violated 42 U.S.C. § 1983 "by the filing of criminal charges" for which "there was no legally adequate basis." (Am. Compl. ¶ 65.)

Section 1983 reads, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Bristow v. Clevenger*, 80 F.Supp.2d 421, 429 (M.D.Pa.2000) (citing *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)) (internal quotations

---

1. The court has jurisdiction over Colbert's federal claims under 28 U.S.C. § 1331. The court has supplemental jurisdiction over his state claim pursuant to 28 U.S.C. § 1367. The court will not address Plaintiff's Fourth

and Fifth Legal Claims as they relate to defendants Rite Aid and Atlantic, as those defendants have not filed motions for summary judgment.

omitted). The plaintiff in a § 1983 claim must prove: (1) that the defendants acted under color of state law; (2) depriving the plaintiff of a right secured under the Constitution or federal law; and (3) damages. *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir.1998).

Plaintiff asserts that his claim arises under the Fourth, Fifth and Fourteenth Amendments. *See* Am. Compl. ¶ 65; Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 19 (stating that "[t]he open question is what Amendment covers [the Municipal Defendant's] conduct"). However, Plaintiff only cites cases analyzing the Fourth Amendment. (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 16–28.) Plaintiff does not analyze or cite any authority for his proposition that his claim arises under any other Amendment.[2]

■ Where a § 1983 claim for malicious prosecution is grounded in the Fourth Amendment, a plaintiff must establish the common law elements of the tort and a deprivation of liberty that is consistent with the concept of a "seizure." *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir.1998). The crux of the inquiry is whether a "seizure" occurred, because the constitutional violation lies in the "deprivation of liberty accompanying the prosecu-

tion" rather than in the prosecution itself. *Id.* at 222.[3]

■ In many cases, this is a distinction without a difference because the filing of criminal charges triggers the issuance of a warrant which leads to an arrest and thereby effects a "seizure" within the meaning of the Fourth Amendment. *See Taylor v. Meacham*, 82 F.3d 1556, 1561 n. 5 (10th Cir.1996) (stating that "[i]n this particular case ... the 'seizure' issue is fairly straightforward, because Mr. Taylor remained in detention, and therefore effectively 'seized,' throughout the time period in question"). In the instant case, however, Colbert was not formally arrested or detained on the underlying criminal charges that form the basis of his § 1983 claim.

To the contrary, the record shows that after responding to an emergency call from a Rite Aid employee reporting an assault, Officer Avram spoke with security guard Sam Cardy, who stated that Colbert had attempted to punch him and had slammed him to the ground. (Avram Dep. at 53–55 & 68; Hanson Dep. at 19.) Avram was advised that Cardy suffered injuries to his rib and elbow. Other witnesses corroborated Cardy's statement that Colbert threw Cardy to the ground.[4] (Avram Dep. at 80; Dep. of Dawn Hack ("Hack

2. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citation omitted).

3. The Fourth Amendment refers to unreasonable "searches and seizures" and does not speak of unreasonable "prosecutions." U.S. Const. amend. IV (recognizing that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized"). Thus, for a state actor to violate the Fourth Amendment by initiating a malicious prosecution against someone, the criminal charges at issue must have imposed "some deprivation of liberty consistent with the concept of a seizure." *Gallo*, 161 F.3d at 222 (citations and internal quotations omitted).

4. Colbert does not deny lifting Cardy into the air and pushing him to the ground. (Colbert Dep. at 96–97.)

Dep.") at 13 & 23; Dep. of Emory Daniels ("Daniels Dep.") at 112 & 159; Hanson Dep. at 19.)

After taking statements from the witnesses, Avram approached Colbert, who was a few blocks from the store. (Avram Dep. at 70–71.) Officer Avram questioned Colbert about the incident at the Rite Aid, and, after telling Avram his side of the story, Colbert went home. *Id.* at 73; Colbert Dep. at 19, 21–22. Colbert did not receive a citation that day, was not handcuffed, and was not taken to the police station. (Colbert Dep. at 21–22.)[5] Colbert eventually received a summons in the mail, and no warrant was required to secure his appearance at the hearings in his case.

Plaintiff, citing *Gallo*, urges the court to consider that the Third Circuit has concluded that something less than forcible detention will suffice to constitute a seizure. In *Gallo*, the court, calling it a "close question," held that the conditions of pretrial release effected a seizure where a plaintiff was required "to post a $10,000 bond ... to attend all court hearings ... to contact Pretrial Services on a weekly basis, and ... [to refrain] from traveling outside New Jersey and Pennsylvania." *Gallo*, 161 F.3d at 222. In the instant case, however, no restrictions were imposed on Colbert's liberty other than the

legal obligation to appear in court at a future date. As stated *supra*, he merely received a summons in the mail. Nothing in the record indicates that he had to post a bond or limit his travel. Accordingly, the court finds that "the fact that [the plaintiff] was given a date to appear in court is insufficient to establish a seizure." *Britton v. Maloney*, 196 F.3d 24, 30 (1st Cir.1999); *Bristow*, 80 F.Supp.2d at 430 (stating that Fourth Amendment violation does not occur every time any judicial proceeding ensues); *Johnson v. City of Chester*, 10 F.Supp.2d 482, 490 (E.D.Pa. 1998) (holding that merely being charged and prosecuted for Disorderly Conduct, 18 Pa. Cons.Stat. Ann. § 5503, is not Fourth Amendment seizure). Thus, as to Plaintiff's Third Legal Claim, the court will enter summary judgment in the Municipal Defendants' favor.

## 2. The Alleged Conspiracy to File Charges Against Colbert

■ Colbert alleges that Officer Avram violated 42 U.S.C. § 1985(3) by conspiring with the employees of Rite Aid and Atlantic to file criminal charges against Colbert because Colbert is an African–American. (Am. Compl. ¶¶ 5, 67 & 68.) The Municipal Defendants assert that this claim must fail because Colbert was not deprived of a constitutional right, nor is there any evidence of a conspiracy.[6]

5. Later, based on the corroborated statements made by Cardy and the other witnesses, Officer Avram drafted a Police Criminal Complaint that included an Affidavit of Probable Cause. (Defs.' Mot. for Summ. J. Ex. G.) The Police Criminal Complaint was sent to the District Justice who, in turn, issued a Summons charging Colbert with harassment, disorderly conduct and simple assault. *Id.* Ex. J. A plaintiff in a § 1983 action may challenge the validity of an affidavit of probable cause by proving, by a preponderance of the evidence, that the police knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for the war-

rant, and that such statements or omissions are material, or necessary, to a finding of probable cause. *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir.1997) (citations omitted). Colbert has not shown that Officer Avram acted in reckless disregard for the truth or that he "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir.2000) (citation omitted).

6. To establish a § 1985(3) violation, a plaintiff must prove: (1) a conspiracy; (2) motivated by a racial or class based discriminatory ani-

The court agrees. First, as discussed *supra*, Colbert has not shown that he was deprived of a constitutional right. Further, the record is bereft of any evidence of conspiracy or discriminatory animus against Colbert. *Isajewicz v. Bucks County Dep't of Communications*, 851 F.Supp. 161, 164 (E.D.Pa.1994) (stating that to show conspiracy, plaintiff must establish agreement or "meeting of the minds" among alleged conspirators); *Kot v. Stolle*, Nos. CIV.A.91–3509 & CIV.A.92–5120, 1993 WL 293887, at *3 (E.D.Pa. Aug.2, 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)) (stating that § 1985(3) violation requires proof of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"). Plaintiff baldly contends that "an inference of conspiracy" may be found in the "unequal treatment" of Colbert, an African–American, and Cardy, a Caucasian, presumably because Colbert was charged with assault but Cardy was not. (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 48.) However, no evidence suggests that Officer Avram's conduct was based on anything other than the corroborated facts provided to him by the witnesses to the incident. There is no evidence of a conspiracy or of racially discriminatory animus. *Moyer*, 2001 WL 73428, at *3 (granting summary judgment on § 1985(3) claim where no evidence indicated discriminatory intent). Thus, the court will grant the Municipal Defendants'

motion as to Plaintiff's Fourth Legal Claim.

### 3. The Municipal Defendants' Training and Policies

■ Colbert alleges that the Municipal Defendants also violated 42 U.S.C. § 1983 by failing to have adequate policies and training regarding racial profiling. (Am. Compl. ¶¶ 62–64.)

Municipalities may be held liable in § 1983 actions only in limited circumstances. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 688–89, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To sustain a § 1983 claim based on a municipal policy, the plaintiff must prove: (1) the existence of a municipal custom or policy; and (2) a violation of his constitutional rights by an officer acting pursuant to that policy or custom. *Doby v. DeCrescenzo*, 171 F.3d 858, 867 (3d Cir.1999); *Bielevicz v. Dubinon*, 915 F.2d 845, 850–51 (3d Cir.1990). Critical to a successful claim is proof of a sufficiently close causal link between the municipality's policy and the specific deprivation of the constitutional right at issue. *Bielevicz*, 915 F.2d at 851.

Here, Plaintiff neither points to any evidence establishing the existence of any municipal custom or policy nor demonstrates any underlying constitutional violation. Thus, he may not sustain a claim for municipal liability based on a policy. *Moyer*, 2001 WL 73428, at *3 (granting summary judgment where plaintiff failed to establish predicate constitutional violation).[7]

---

mus, designed to deprive, either directly or indirectly, any person or class of persons the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.1997), *vacated in part on other grounds by* 232 F.3d 360 (3d Cir.2000); *Moyer v. North Wales*, No.00–1092, 2001 WL 73428,

at *3 (E.D.Pa. Jan.25, 2001) (citations omitted).

**7.** In his Rule 56(f) Motion, Plaintiff requests that the court not decide the instant motion for summary judgment, due to what he perceives as a need for additional discovery. Plaintiff seeks, *inter alia*, the production of the City of Reading's Police Department's Internal Affairs Complaints. Plaintiff asserts

Alternatively, a municipality may be held liable if it fails to properly train its employees, such that the failure amounts to deliberate indifference to the rights of persons with whom its employees come into contact. *Reitz v. County of Bucks,* 125 F.3d 139, 145 (3d Cir.1997) (citation omitted). The plaintiff must demonstrate that the municipality through its deliberate conduct was the moving force behind the alleged injury. *Id.* The focal inquiry is on the adequacy of the municipality's training program in relation to the tasks that the particular officers must perform and the connection between the identified deficiency in the municipality's training program and the ultimate injury. *Id.* Where a plaintiff alleges that a municipality indirectly caused an employee to inflict an injury, "stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 suit is not held liable solely for the conduct of its employee." *Id.*[8]

Here, Colbert cannot maintain his failure to train claim because he has not established any underlying constitutional violation. *See Moyer,* 2001 WL 73428, at *3 (granting summary judgment where plaintiff failed to establish predicate constitutional violation).[9] Thus, the court will

grant the Municipal Defendants' motion as to Plaintiff's Second Legal Claim.

## B. *Plaintiff's State Law Claim*

Colbert alleges that Officer Avram, Rite Aid and Atlantic violated Pennsylvania law by "arrest[ing] and det[aining]" him without probable cause. (Compl. ¶ 71.) The Municipal Defendants assert that Officer Avram did not arrest Colbert and that even if he had done so, probable cause existed.

A false arrest is: 1) an arrest made without probable cause; or 2) an arrest made by a person without privilege to do so. *McGriff v. Vidovich,* 699 A.2d 797, 799 n. 3 (Pa.Cmwlth.1997) (citing *Renk v. City of Pittsburgh,* 537 Pa. 68, 641 A.2d 289 (1994)). It involves the taking, seizing, or detaining of the person of another: (1) by touching or putting hands on the arrestee; or (2) by any act that indicates an intention to take the arrestee into custody and that subjects the arrestee to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested. *Bristow,* 80 F.Supp.2d at 436. It is "a seizure characterized by highly intrusive or lengthy search or detention."

that information concerning such complaints may reveal the existence of a pattern of conduct that could have placed the Municipal Defendants on notice of the need for cultural diversity training. (Rule 56(f) Verified Statement of Counsel ¶ 4; Pl.'s Rule 37 Mot. to Compel Discovery from Municipal Defs. ¶ 13.) "A court may deny a continuance of discovery when a party's motion is based on speculation or raises merely colorable claims, when the party has already had an adequate opportunity to discover the information, or when the discovery requests themselves are irrelevant." *City of Rome v. Glanton,* 958 F.Supp. 1026, 1039 (E.D.Pa.1997), *aff'd* 133 F.3d 909 (3d Cir.1997) (citations omitted). Colbert has had more than adequate time for discovery, and his speculative assertions do not set forth reasons sufficient to justify a continuance.

8. Further, a plaintiff cannot sustain a failure to train claim based solely upon one incident. *Zimmerman v. York,* No.94–4076, 1998 WL 111808, at *10 (E.D.Pa. Feb.9, 1998) (citations omitted).

9. Incidentally, the court notes that in addition to training received before their employment, Reading police officers receive annual "Act 180" training under 53 Pa. Cons.Stat. Ann. § 2161 *et seq.,* as required by Pennsylvania's Municipal Police Officers Education and Training Commission, plus "in-service" training that includes course work on cultural diversity. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 29–30, Exs. L, M & N; Avram Dep. at 11, 20–21 & 30.)

*Owens v. County of Del.,* No.Civ.A.95–4282, 1996 WL 476616, at *11 (E.D.Pa. Aug.15, 1996), *aff'd* 116 F.3d 469 (3d Cir. 1997), (citation and internal quotations omitted). It includes "any act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest." *Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975, 978 (1982) (citations omitted). Absent a "formal arrest," the question is whether there has been a "restraint on freedom of movement of the degree associated with a formal arrest." *Bristow,* 80 F.Supp.2d at 436.

In this case, Colbert was not formally arrested. On the day he spoke with Officer Avram, Colbert was not handcuffed, fingerprinted, or taken to the police station, and he did not receive a citation. Later, Colbert received a summons in the mail, giving him a date to appear in court. No bond was posted and no warrant was required to secure his appearance.

Colbert steadfastly relies on *Gallo* to support his assertion that he was seized, so as to constitute an arrest, by Officer Avram. (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 60–61.) As discussed *supra, Gallo* is inapposite. *See Gallo,* 161 F.3d at 222 (finding it a close question, but concluding that requiring plaintiff to post $10,000.00 bond, attend all hearings, and contact pretrial services weekly constituted Fourth Amendment seizure). The court concludes that the fact that Plaintiff briefly spoke with Officer Avram and later received a date to appear in court is insufficient to establish a "restraint on freedom of movement of the degree associated with a formal arrest." *Bristow,* 80 F.Supp.2d at 436.

■ Even if Colbert had been arrested, his claim would nonetheless fail because Officer Avram had probable cause to arrest him.[10] Probable cause to arrest "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed." *Orsatti v. New Jersey State Police,* 71 F.3d 480, 483 (3d Cir.1995) (citing *United States v. Cruz,* 910 F.2d 1072, 1076 (3d Cir.1990) & *Dunaway v. New York,* 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). A court may find that "probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." *Sherwood v. Mulvihill,* 113 F.3d 396, 401 (3d Cir.1997); *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788–89 (3d Cir.2000); *Cosmas v. Bloomingdales Bros., Inc.,* 442 Pa.Super. 476, 660 A.2d 83, 88 n. 5 (1995) (citation omitted).

As stated *supra,* the uncontradicted record shows that Officer Avram responded to an emergency call from a Rite Aid employee reporting an assault. (Avram Dep. at 53–55; Hanson Dep. at 19.) Witnesses corroborated Cardy's statement that Colbert injured Cardy by throwing him to the ground. (Avram Dep. at 80 & 84; Hack Dep. at 13 & 23; Hanson Dep. at 19; Daniels Dep. at 112 & 159.) After taking statements from the witnesses, Officer Avram questioned Colbert, who then went home. (Avram Dep. at 73; Colbert Dep. at 21–22.) Officer Avram drafted a Police Criminal Complaint, which included an Affidavit of Probable Cause. The court concludes that probable cause to arrest

---

10. "The tests for determining probable cause ... are essentially the same under the federal and [Pennsylvania] constitutions." *Lynch v. Hunter,* 2000 WL 1286396, at *5 (E.D.Pa. Sept.1, 2000), *amended by* 2000 WL 1793396 (E.D.Pa. Nov.22, 2000), (citing *Commonwealth v. Gayle,* 449 Pa.Super. 247, 673 A.2d 927, 931 n. 9 (1996)).

Colbert existed because the facts and circumstances within Officer Avram's knowledge were sufficient to warrant a reasonable person to believe that an offense had been committed. *Orsatti,* 71 F.3d at 483; *see Lynch,* 2000 WL 1286396, at \*4 (stating that report of security guard and store managers, alone, constituted probable cause); *Owens,* 1996 WL 476616, at \*14 (citations omitted) (stating that "[i]t is well established law that in determining whether probable cause to arrest an individual exists, police are entitled to rely on seemingly reasonable information from an identified purported victim of a crime").[11]

Thus, the court will grant summary judgment in Officer Avram's favor as to Plaintiff's Fifth Legal Claim.[12]

## IV. CONCLUSION

For the reasons set forth above, the court will: grant the Municipal Defendants' motion for summary judgment; deny Plaintiff's motion to compel discovery as moot; deny Plaintiff's Rule 56(f) motion; grant Plaintiff's motion to file a table of citations; grant Plaintiff's motion to file an amended certificate of service; and deny Plaintiff's motion to compel payment as moot.

An appropriate Order follows.

**11.** Further, Colbert was found guilty of harassment by the District Justice on March 19, 1999. (Compl. ¶ 45; Colbert Dep. at 50.) Colbert appealed to the Court of Common Pleas where his case was dismissed because the District Attorney failed to properly serve subpoenas on necessary witnesses. (Colbert Dep. at 51; Hanson Dep. at 56–57.) Pennsylvania courts have stated that, even where it is later overturned, a conviction is conclusive proof of the existence of probable cause, unless the convicted party can show fraud or other undue influences at work in the conviction proceedings. *McGriff,* 699 A.2d at 799 (citing *Cosmas,* 660 A.2d at 86, Restatement of Torts, 2d § 667(1), and listing cases); *see also Mosley v. Wilson,* 102 F.3d 85, 93 (3d Cir.1996) (recognizing that Pennsylvania Su-

## ORDER

AND NOW, TO WIT, this 24th day of April, 2001, upon consideration of Defendants the City of Reading's, Joel D. Avram's, William M. Heim's, and Paul J. Angstadt's (collectively, the "Municipal Defendants") Motion for Summary Judgment (Document No. 47) and Plaintiff Homer Lee Colbert's ("Plaintiff") opposition thereto, IT IS ORDERED that the motion is GRANTED. Judgment is entered in favor of the Municipal Defendants and against Plaintiff on all counts. Plaintiff's opposition, styled as a "Motion in Opposition to the Municipal Defendant's Motion for Summary Judgment," (Document No. 50) is DENIED.

IT IS FURTHER ORDERED that:

(1) Plaintiff's Rule 37 Motion to Compel Discovery from the Municipal Defendants (Document No. 40) is DENIED AS MOOT;

(2) Plaintiff's Rule 56(f) Motion (Document No. 48) is DENIED;

(3) Plaintiff's Motion to File of Record the Table of Citations (Document No. 51) is GRANTED;

(4) Plaintiff's Motion to File Amended Certificate of Service (Document No. 55) is GRANTED; and

preme Court has not spoken on issue and that undue influence in conviction proceedings negates finding of probable cause); *but see Cap v. K–Mart Discount Stores, Inc.,* 357 Pa.Super. 9, 515 A.2d 52, 54 (1986) (finding that conviction reversed on appeal was not sufficient proof of probable cause to defeat action for malicious prosecution). Colbert has not shown the existence of fraud or undue influence in his conviction proceedings.

**12.** Finally, Plaintiff's Motion to Compel Defendant Rite Aid and Atlantic Security to Pay for the Deposition of the Plaintiff's Expert will be denied as moot, it appearing that payment was made. (Opp'n of Defs. Rite Aid and Atlantic to Pl.'s Mot. to Compel Payment ¶ 1.)

(5) Plaintiff's Motion to Compel Defendant Rite Aid and Atlantic Security to Pay for the Deposition of the Plaintiff's Expert (Document No. 59) is DENIED AS MOOT.