**Daniel ZAK and Warren Huertas, Plaintiffs,**

v.

**Darlene ROBERTSON, et al., Defendants.**

No. CIV.A.3:01–CV–165 (J).

United States District Court, D. Connecticut.

March 17, 2003.

Salvatore J. Petrella, Cromwell, CT, for Plaintiffs.

Jeffrey G. Schwartz, Earl F. Dewey, II, Scott B. Clendaniel, Law Offices of Scott B. Clendaniel, Hartford, CT, for Defendants.

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]

HALL, District Judge.

The plaintiffs, Daniel Zak and Warren Huertas (collectively "plaintiffs"), bring this action against the City of Hartford and Darlene Robertson, Manfred Rehm, Joseph Zibbideo, and Abraham Ford, in their official and individual capacities, (collectively "defendants"), alleging constitutional and state law violations arising out of the issuance of arrest warrants against them in connection with alleged housing code violations. Plaintiffs allege that, through falsification of arrest warrant affidavits and use of the criminal process to punish Warren Huertas for the exercise of his First Amendment rights, defendants violated their rights under both Section 1983 and Connecticut common law to be free from false arrest, malicious prosecution, and malicious abuse of process. Further, plaintiffs allege that defendants intentionally and negligently inflicted emotional distress on them in violation of Connecticut common law.

The defendants move for summary judgment on all claims asserted. Specifically, the defendants argue that the plaintiffs' rights under the United States Constitution were not denied by the issuance of the arrest warrants, or, alternately, that they are entitled to qualified immunity; the plaintiffs were not subject to false arrest, malicious prosecution, or malicious abuse of process under Connecticut common law; and finally, the defendants did not intentionally or negligently inflict emotional distress on the plaintiffs. For the reasons stated below, defendants' motion for summary judgment is granted.

### I. FACTUAL BACKGROUND

The plaintiffs' action arises out of the issuance of a summons and complaint against them for housing code violations on February 16, 1999. Plaintiff Daniel Zak ("Zak") was the owner of rental property located at 1063–1065 Capitol Avenue in Hartford, Connecticut. At all times relevant to this action, plaintiff Warren Huertas ("Huertas") was an employee of the Department of Licenses & Inspections, Housing Code Division, for the City of Hartford, Connecticut ("the Department"). The individual defendants were also employees of the Department of Licenses & Inspections, Housing Code Division, for the City of Hartford.

On May 18, 1998, Warren Huertas, while visiting his mother who resides at 1065 Capitol Avenue, called in a telephone complaint to the City of Hartford Action Line to report the condition of a neighboring property located at 1055–1057 Capitol Avenue. Plaintiffs claim that the property at 1055–1057 Capitol Avenue was infested with rodents and overrun with refuse and

that the Department never took any action with respect to 1055–1057 Capitol Avenue. Defendants assert that the Department successfully enforced the housing code or that property.

On May 28, 1998, Darlene Robertson, on behalf of the Department, conducted an inspection of Zak's property at 1063–1065 Capitol Avenue, the property adjoining 1055–1057 Capitol Avenue. Robertson claims that, upon her visit to the property, she encountered Huertas. Robertson asserts that Huertas, whom she knew because he was a co-worker, told her he was the manager of the property. Huertas denies ever making such a representation. Following Robertson's inspection, the Department notified Zak and Huertas, by letters dated June 18, 1998, of housing code violations relating to the harborage of rodents on the property at 1063–1065 Capitol Avenue.

Zak maintains that, in response to the letter dated June 18, 1998, he took almost immediate remedial action. He claims that, through a series of repairs on the property, he addressed every alleged violation listed in the letter. Huertas helped him to identify and perform necessary repairs. The defendants dispute that any remedial action was taken. Robertson conducted a subsequent inspection of the property on July 2, 1998. She reported no change in the condition of the property at that time. Following this inspection, Robertson sent a second letter to Zak regarding the violations, dated July 8, 1998. Robertson testified that, upon her third inspection on December 9, 1998, again, no action with respect to the violations had been taken.

On February 8, 1999, Robertson submitted affidavits regarding the housing code violations in support of Zak's arrest as the owner of the property and Huertas' arrest as an agent of the property. The affidavits stated that housing code violations were observed at the property at 1063–1065 Capitol Avenue on May 28, 1998, July 2, 1998, and December 9, 1998. In her affidavit as to Zak, Robertson stated that he was the owner of the property, and attached a warranty deed as evidence. In her affidavit as to Huertas, Robertson stated that she had ascertained from the records of the Town Clerk that Huertas was the agent of the property. It is undisputed that the Town Clerk keeps no records that could support this assertion and that it is clearly false.

On February 16, 1999, on the basis of Robertson's affidavits, summons and complaints were issued against Zak and Huertas. Zak and Huertas were each required to pick up a copy of the summons and complaint against him from the Glastonbury and Hartford police stations, respectively. Both plaintiffs were required to appear in court to answer the charges, but neither plaintiff was ever physically arrested or otherwise taken into police custody. On April 6, 1999, following the remedy of all housing code violations on the property, all charges against Zak and Huertas were dropped.

The plaintiffs allege that the above actions were taken against them by the defendants in retaliation for the exercise of Huertas' First Amendment rights. They allege that, as a result of the phone complaint Huertas made regarding the property at 1055–1057 Capitol Avenue and some longstanding job disputes between himself and the defendants, the defendants targeted the property at 1063–1065 Capitol Avenue. The plaintiffs allege that, although Huertas was not the owner of the property, the defendants knew Huertas was associated with the property at 1063–1065 Capitol Avenue and took action against it for that reason.

## II. DISCUSSION

### A. Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Marvel Characters Inc.*, 310 F.3d at 286. Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505, and present such evidence that would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 253 (2d Cir. 2002). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the moving party." *Lucente*, 310 F.3d at 254. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original). The substantive law of the claim governs materiality, as "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

### B. Section 1983 Claims

#### 1. False Arrest

■ The plaintiffs bring a claim of false arrest in connection with the issuance of the complaint and summons against them. A plaintiff may only bring a claim of false arrest, however, if he suffered a deprivation of liberty prior to the issuance of legal process. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 117 (2d Cir.1995); *Lo Sacco v. Young*, 20 Conn.App. 6, 20, 564 A.2d 610 (Conn.App.1989). "If the defendant complies with the formal requirements of the law, as by swearing out a valid warrant, so that the arrest of the plaintiff is legally authorized..., [h]e is ... liable, if at all, only for a misuse of legal process to effect a valid arrest for an improper purpose. The action must be for malicious prosecution...." *LoSacco*, 20 Conn.App. at 20, 564 A.2d 610.

The basis of plaintiffs' false arrest claim is that the issuance of the summons and complaint was not supported by probable cause. Because plaintiffs have not come forward with any evidence that they suffered any deprivation of liberty prior to the issuance of legal process against them, their claim is for malicious prosecution, not false arrest. Defendants' motion for summary judgment with respect to plaintiffs' false arrest claim is therefore granted.

## 2. Malicious Prosecution

■ Plaintiffs claim that the defendants subjected them to malicious prosecution by prosecuting them, in connection with the issuance of the summons and complaint, in the absence of probable cause. "Once a plaintiff presents a claim of malicious prosecution under § 1983, the court must engage in two inquiries: whether the defendant's conduct was tortious; and whether the plaintiff's injuries were caused by the deprivation of liberty guaranteed by the Fourth Amendment." *Singer*, 63 F.3d at 116. Because the court finds that the second prong of this analysis disposes of plaintiffs' claim, it will address these inquiries in reverse order.

> The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person-*i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty. A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of "seizure."

*Id.* The court finds that, in this case, the plaintiffs have come forward with no evidence from which a jury could find a deprivation of liberty sufficiently substantial to constitute a seizure for the purposes of the Fourth Amendment. Although the Second Circuit has not directly addressed whether or not the issuance of a summons and complaint, coupled with the requirement that an individual appear in court, constitutes a seizure, the weight of authority holds that it is not.

The Second Circuit case most closely akin to the facts of this case is *Murphy v. Lynn*, 118 F.3d 938 (2d Cir.1997). In that case, the plaintiff was "seized" because, in connection with his pretrial release, he was forbidden from traveling outside the court's jurisdiction and was required to attend eight court appearances. *Id.* at 946. The deprivations of liberty suffered by Zak and Huertas are clearly distinguishable from those in *Murphy*. Nothing in that case indicates that the issuance of a summons and complaint, in the absence of any other conditions of pretrial release, constitutes a seizure for the purposes of the Fourth Amendment.

In addition, dicta in *Singer v. Fulton County Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995), supports the conclusion that no seizure occurred here. In that case, the court did not decide whether the plaintiff's release after arraignment constituted a seizure for the purposes of his malicious prosecution claim. The Second Circuit noted that it could not do so because there was an insufficient record with respect to what deprivations of liberty, if any, were imposed on Singer in association with his pretrial release. *Id.* at 117. If pretrial release were a *per se* seizure for the purposes of a Fourth Amendment Section 1983 claim, these factual findings, which included whether or not Singer "was subjected to any restriction on his ability to travel freely" or whether "he was required to post any bail" would be unnecessary to resolution of the issue. *See id.*

Neither does a required court appearance constitute a seizure for the purposes of the Fourth Amendment. The First Circuit has held that, in the absence of any arrest, detention, restriction in his travel or other deprivations of liberty, an individual who is required to attend a trial is not seized for the purposes of the Fourth Amendment. *Nieves v. McSweeney*, 241 F.3d 46, 57 (1st Cir.2001). The District Court for the Eastern District of Pennsylvania has similarly held that a plaintiff who received a complaint and summons in the mail and later attended trial, in the absence of any other restraints on his liberty,

was not seized. *Colbert v. Angstadt,* 169 F.Supp.2d 352, 356 (E.D.Pa.2001); *see also Trafton v. Devlin,* 43 F.Supp.2d 56, 62 (D.Me.1999)(holding that required attendance at trial not a seizure under the Fourth Amendment).

The facts of *Colbert* are directly analogous to those presented in this case. Neither Zak nor Huertas allege that a police officer ever conducted a traditional arrest or seizure, in other words, a seizure which occurs "whenever a police officer accosts an individual and restrains his freedom to walk away." *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Each picked up the summons and complaint against him at a police station, each had to attend court on one or more occasions before all charges against him were dropped. No other conditions of release were imposed by the state court. The restraints on the plaintiffs' liberty imposed in this case, therefore, were insufficient as a matter of law to constitute a seizure for the purposes of the Fourth Amendment. Because the plaintiffs have failed to come forward with evidence of a material issue of fact concerning a violation of their federal constitutional rights, defendants' motion for summary judgment is granted with respect to plaintiffs' Section 1983 malicious prosecution claim.

### 3. Abuse of Process

In addition to their claim of malicious prosecution, plaintiffs also bring a claim of malicious abuse of process. "The torts of malicious prosecution and abuse of process are closely allied. While malicious prosecution concerns the improper issuance of process, the gist of abuse of process is the improper use of process after it is regularly issued." *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994) (citation omitted). "In the criminal context, malicious abuse of process is 'by definition a denial of procedural

due process,' " and therefore may form the basis for liability under Section 1983. *Id.* (quoting *Jennings v. Shuman,* 567 F.2d 1213, 1220 (3d Cir.1977)). Under Connecticut law,

> An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of a legal process ... against another *primarily* to accomplish a purpose for which it is not designed.... Comment b to § 682 explains that the addition of primarily is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.

*Suffield Development Assoc. Ltd. Partnership v. National Loan Investors, L.P.,* 260 Conn. 766, 772–73, 802 A.2d 44 (2002)(emphasis in original).

In this case, the plaintiffs asserted at oral argument that the defendants abused the criminal process in an effort to silence Huertas' exercise of his First Amendment rights. However, although the plaintiffs have come forward with evidence that the defendants may have intended to punish Huertas as a result of his complaints about 1055–1057 Capitol Avenue or a variety of job-related disputes, *see* Huertas Depo. at 14–44 [Exh. I to Pls' Rule 9(c)(2) Statement, Dkt. No. 25], nothing in the record supports an inference that the defendants' primary purpose in instituting criminal process against Zak and Huertas was to alter Huertas' future behavior. As the Third Circuit has noted, "if the defendant

justifies issuance of process by untruthfully saying that the plaintiff solicited burglary and uses the process only to have him jailed, this is malicious use only. It is not malicious abuse because jailing is the purpose for which criminal process was intended." *Jennings v. Shuman,* 567 F.2d 1213, 1219 (3d Cir.1977).

██ Here, plaintiffs allege that the criminal process was initiated without probable cause and with an improper motive, the desire to punish them for the exercise of Mr. Huertas' First Amendment rights. These allegations are sufficient to support a state law claim for malicious prosecution, but not for malicious abuse of process. The motive to punish the exercise of rights is akin to the "incidental motive of spite" described in *Suffield.* An improper motive alone cannot support a claim for abuse of process unless the plaintiff demonstrates that the defendant intended to achieve some end result that is distinct from criminal punishment (i.e. fine and/or imprisonment). Plaintiffs have not demonstrated there is a material issue of fact concerning any such improper use. As a result, defendants' motion for summary judgment with respect to plaintiffs' claims of abuse of process under Section 1983 is granted.

## C. Connecticut Common Law Claims

Plaintiffs, in addition to their Section 1983 claims, bring claims for false arrest, malicious prosecution, abuse of process, intentional infliction of emotional distress and negligent infliction of emotional distress under Connecticut common law. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[P]endent jurisdiction is a doctrine of discretion, not

of plaintiff's right." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

██ While dismissal of the state claims is not absolutely mandatory, *Rosado v. Wyman,* 397 U.S. 397, 403–05, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), the basis for retaining jurisdiction is ·weak when the federal claims are dismissed before trial. *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130. When "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon,* 484 U.S. at 350 n. 7, 108 S.Ct. 614. *See also DiLaura v. Power Authority of New York,* 982 F.2d 73, 80 (2d Cir.1992); *Baylis v. Marriott Corp.,* 843 F.2d 658, 664–65 (2d Cir.1988); *Indep. Bankers Ass'n v. Marine Midland Bank,* 757 F.2d 453, 464 (2d Cir.1985).

Because this court has granted summary judgment with respect to the plaintiffs' Section 1983 claims, it will decline to exercise pendent jurisdiction over plaintiffs' remaining state law claims.

## III. CONCLUSION

For the reasons set forth above, the defendants' Motion for Summary Judgment [Dkt. No. 22] is GRANTED as to all claims in the plaintiffs' complaint. The clerk is ordered to close this case.

**SO ORDERED.**