

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-23-1998

# Gallo v. City of Philadelphia

Precedential or Non-Precedential:

Docket 98-1071,98-1238

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Gallo v. City of Philadelphia" (1998). *1998 Decisions.* Paper 267.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/267

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 23, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-1071 and 98-1238

JAMES J. GALLO, JR.;
ROSE MARIA GALLO,

     Appellants

v.

CITY OF PHILADELPHIA; RENALD PELSZYNSKI, LT.,
individually and in his official capacity; JOSEPH RIZZO,
individually; MITCHELL S. GOLDBERG, individually;
GERALD J. KUFTA, individually; KUFTA ASSOCIATES;
COZEN & O'CONNOR; PENNSYLVANIA LUMBERMEN'S
MUTUAL INSURANCE COMPANY; *THOMAS J. ROONEY,
in his individual capacity; WILLIAM J. CAMPBELL, in his
individual capacity

     *Amended per Clerk's 4/7/98 order

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 96-03909)

Argued October 8, 1998

BEFORE: GREENBERG, NYGAARD, and NOONAN,*
Circuit Judges

(Filed: November 23, 1998)

_____

*Honorable John T. Noonan, Jr., Senior Judge of the United States Court
of Appeals for the Ninth Circuit, sitting by designation.

David Rudovsky (argued)
Kairys, Rudovsky, Epstein,
 Messing & Rau
924 Cherry St., Suite 500
Philadelphia, PA 19107

Franklin E. Fink
David Lockard & Assoc. P.C.
1101 Market St., Suite 2832
Philadelphia, PA 19107

 Attorneys for Appellant

City of Philadelphia
Law Department
Stephanie L. Franklin-Suber
City Solicitor
Marcia Berman (argued)
Assistant City Solicitor,
Appeals Unit
One Parkway Building
1515 Arch Street, 17th Floor
Philadelphia, PA 19102-1595

 Attorneys for Appellees
 Lt. Renald Pelszynski and
 City of Philadelphia

Michael R. Stiles
United States Attorney
Joan K. Garner (argued)
Deputy Chief, Civil Division
Assistant United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476

 Attorneys for Appellees
 Thomas J. Rooney and
 William J. Campbell

2

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

After a jury acquitted him of charges that he deliberately had set fire to his business in Philadelphia, James Gallo brought suit under 28 U.S.C. S 1983 and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971), against the City of Philadelphia and the municipal and federal officials responsible for investigating his case.1  Gallo claimed that the municipal fire marshal had altered his views on the fire's cause in response to pressure from representatives of Gallo's insurance company, and that all of the officials had withheld exculpatory evidence from the United States Attorney. The district court, construing Gallo's suit as a claim of malicious prosecution, concluded that the Supreme Court's recent decision in Albright v. Oliver, 510 U.S. 266, 114 S. Ct. 807 (1994), required Gallo to show that he had suffered a Fourth Amendment seizure. The court ruled that the pretrial restrictions imposed upon Gallo, which included posting a bond and limiting inter-state travel, did not amount to a seizure. It therefore granted the City and municipal defendants' summary judgment motion and the federal officials' motion to dismiss. See Gallo v. City of Philadelphia, 975 F. Supp. 723 (E.D. Pa. 1997). Because we conclude that the intentional restrictions imposed on Gallo's liberty qualified as a seizure, we will reverse. We have jurisdiction under 28 U.S.C. S 1291; the district court had subject matter jurisdiction based on 28 U.S.C. SS 1331, 1343(a) and 1367.

_____

1. In the district court, Gallo's case involved additional defendants and claims. We, however, only need discuss the section 1983 and Bivens claims against the appellees as the other defendants and claims have been dismissed.

II. FACTUAL AND PROCEDURAL HISTORY

A. Factual History

Inasmuch as the district court resolved this case by granting a motion to dismiss and a motion for summary judgment, we consider the facts in the light most favorable to Gallo. See Smith v. National Collegiate Athletic Ass'n, 139 F.3d 180, 183 (3d Cir.), cert. granted and denied, 119 S.Ct. 31, 170 (1998); Hilfirty v. Shipman, 91 F.3d 573, 577 (3d Cir. 1996). On June 11, 1989, a fire extensively damaged Gallo's Cabinets, a shop in Philadelphia owned by appellant, James Gallo. Lt. Renald Pelszynski, a Philadelphia fire marshal dispatched to the scene to establish the fire's cause, concluded that thefire started when a hand iron ignited a cloth. Pelszynski recorded his conclusion about the fire's origin in a Fire Marshal's Incident Report. Gallo claims that nothing in this report suggested that the fire resulted from arson.

After the fire, Gallo filed a claim with Pennsylvania Lumberman's Mutual Insurance Company, which indirectly employed two persons to investigate the fire's cause, Gerald Kufta and Joseph Rizzo. Kufta is an investigator and Rizzo is a former Philadelphia Fire Commissioner. Kufta and Rizzo contacted Lt. Pelszynski to discuss the fire's circumstances without complying with Fire Department procedures that required them to apply in writing to speak to Pelszynski. The record does not include any documentation of the substance of their conversations.

Gallo claims that after Pelszynski spoke to Kufta and Rizzo, he changed his Fire Marshal's Incident Report in two primary ways. First, he altered the cause of fire entry from electrical appliance to incendiary, thus suggesting arson. Second, he added text to the report stating his view that someone deliberately had wrapped a cloth around the heating iron to start the fire. Gallo claims that Pelszynski never disclosed the existence of the "original" report, and that, in fact, he took steps to conceal it.

After filing the allegedly revised report, Pelszynski referred Gallo's case to the joint Philadelphia-Federal arson task force. The United States Attorney's Office opened a criminal investigation in July 1990, and Thomas Rooney

4

and William Campbell, agents from the Bureau of Alcohol, Tobacco & Firearms, were assigned to the case. Subsequently, Rooney prepared a report in which he stated that the Fire Marshal's office had ruled that the origin of the fire was incendiary and in which he made no mention of Pelszynski's original report.

On May 31, 1994, a federal grand jury indicted Gallo on two counts of mail fraud, one count of malicious destruction of a building by fire, and one count of making false statements to obtain a loan. After responding to a notice, Gallo was arraigned on the charges on August 4, 1994, and was released on a $10,000 personal recognizance bond. He never was arrested, detained, or handcuffed. As a condition of his release, the court prohibited Gallo from traveling beyond New Jersey and Pennsylvania and instructed him to contact Pretrial Services weekly. These restrictions remained in effect through Gallo's trial in March 1995, a period of over eight months from when the court imposed them.

After the indictment, Gallo requested the United States Attorney's Office to produce all exculpatory material, but the government initially did not provide him with a copy of the original fire marshal report. Moreover, neither Kufta, Rizzo, nor Pelszynski produced this report in response to Gallo's subpoenas seeking all materials in their possession that related to the Gallo fire.

On January 6, 1995, approximately two months before his trial, Gallo learned of the existence of Pelszynski's original report when the United States Attorney's office supplied it to him. The government claimed that the report came from Rooney's files but that Rooney was unsure of its origin.

Although Gallo pled guilty to the count of making a false statement to obtain a loan, he went to trial on the other counts of the indictment. During the trial, Gallo used Pelszynski's original report to cross-examine him, but Pelszynski claimed that he knew nothing about the report and had concluded from the beginning of his investigation that the fire at Gallo's Cabinets had been set intentionally. The jury acquitted Gallo of all remaining charges in the indictment.

B. Procedural History

Following his acquittal, Gallo filed two separate suits alleging violations of his federal rights. In thefirst suit under 42 U.S.C. S 1983, he claimed that the City of Philadelphia, Pelszynski, Kufta and Rizzo, among others, had caused the federal government to prosecute him without probable cause. In the second suit, a Bivens action, Gallo contended that Rooney and Campbell had deprived him of his constitutional rights by failing to disclose the existence of the "original" report until two months prior to trial. The district court consolidated the cases.

Subsequently, the City of Philadelphia and Lt. Pelszynski filed a motion for summary judgment arguing in part that Gallo had suffered no constitutional injury justifying a section 1983 action because he had not been "seized" within the meaning of the Fourth Amendment. Rooney and Campbell filed a motion to dismiss contending that they had qualified immunity and that, in any case, failure to turn over exculpatory material in a more timely manner was not a constitutional injury.

The district court granted both of these motions for the same reason in the same opinion and order. Construing Gallo's complaint as alleging a claim of malicious prosecution,2 the court found that the Supreme Court's recent decision in Albright v. Oliver, 510 U.S. 266, 114 S. Ct. 807, required Gallo to show a Fourth Amendment violation in order to prove a constitutional injury. The court then ruled that Gallo had failed to show such a violation because the restrictions on his liberty pending and during trial did not amount to a seizure. Thus, the court found that he could not recover under either section 1983 or in a Bivens action. The district court specifically did not rule on whether Gallo had satisfied the common law elements of a

_____

2. Decisions have "recognized that a S 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed material information from, prosecuting authorities." 1A Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation, S3.20, at 316 (3d ed. 1997).

6

malicious prosecution claim or whether the federal agents
were entitled to qualified immunity. Gallo then appealed.[3]

## III. DISCUSSION

A. Did the Restrictions Imposed upon Gallo as Part of His
    Criminal Prosecution Amount to a Seizure under the
    Fourth Amendment?

The federal and municipal officials raise various
challenges in their brief to Gallo's claims in this appeal.[4]

_____

3. Rooney and Campbell argue that we do not have jurisdiction to review
the district court's grant of their motion to dismiss because Gallo failed
to mention specifically the motion in his notice of appeal. After
considering this argument, we conclude that the notice sufficiently
informed them of Gallo's intent to appeal the order granting the motion.
Thus, we have jurisdiction to review the district court's decision to
dismiss Gallo's suit against them.

4. The appellees did not raise many of the arguments in the district court
that they advance on appeal, although Rooney and Campbell did claim
qualified immunity. As we have indicated "[t]his court has consistently
held that it will not consider issues that are raised for the first time
on
appeal." Harris v. Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994). Thus,
we decline to address the appellees' arguments on issues other than
whether the restrictions imposed upon Gallo amounted to a seizure and
whether Rooney and Campbell have qualified immunity; the remaining
arguments may be addressed by the district court on remand.

We will not affirm the dismissal as to Rooney and Campbell based on
their qualified immunity claims. Under the qualified immunity doctrine,
a government official will be liable only if the plaintiff can show that
the
official violated clearly established law of which a reasonable person
should have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102
S.Ct. 2727, 2738 (1982). The relevant question is "whether that law was
clearly established at the time an action occurred." Harlow, 457 U.S. at
818, 102 S.Ct. at 2738. Rooney and Campbell suggest that the official
"action" Gallo protests is his post-indictment seizure, which began in
August 1994. In our view, however, the allegedly unlawful actions
occurred earlier, when Rooney and Campbell failed to provide
exculpatory material to the prosecutor. If, as the record suggests, all of
these actions occurred prior to 1994, then Rooney and Campbell are not
entitled to qualified immunity because the pre-Albright law of this
circuit
clearly provided that malicious prosecution violated federal law. See Lee

7

But the district court granted the motion to dismiss and
the motion for summary judgment on a single issue: it
concluded that Gallo had failed to show a constitutional
violation, as required by section 1983 and Bivens, because
the restrictions imposed on him did not qualify as a seizure
within the meaning of the Fourth Amendment. Our review
of a district court's decision to grant a motion to dismiss or
a motion for summary judgment is plenary. See Smith, 139
F.3d at 183; Reitz v. County of Bucks, 125 F.3d 139, 143
(3d Cir. 1997).

1. The effect of Albright v. Oliver on malicio us prosecution
        claims in federal court

Before the Supreme Court's decision in Albright , we
permitted plaintiffs to bring malicious prosecution claims
under section 1983 by merely alleging the common law
elements of the tort. See Lee v. Mihalich, 847 F.2d 66, 69–
70 (3d Cir. 1988). Our cases held that by proving a
violation of the common law tort, a plaintiff proved a
violation of substantive due process that could form the
basis for a section 1983 suit. See, e.g., Lippay v. Christos,
996 F.2d 1490, 1502 (3d Cir. 1993).

_____

v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988) (stating that "the elements of
liability for the constitutional tort of malicious prosecution under S
1983
coincide with those of the common law tort"); see also United States v.
Lanier, 117 S.Ct. 1219, 1226 (1997) (suggesting that decisions of the
Courts of Appeals are sufficient to make a right"clearly established");
Pro
v. Donatucci, 81 F.3d 1283, 1291–92 (3d Cir. 1996) (assuming that
decisions of this court can clearly establish a right for qualified
immunity purposes); Medina v. City and County of Denver, 960 F.2d
1493, 1498 (10th Cir. 1992) ("in order for the law to be clearly
established, there must be a Supreme Court or Tenth Circuit decision on
point").

We are not to be understood that the withholding of exculpatory
information always will deprive a public official of qualified immunity.
After all, some information may be tangential or the prosecutor may
obtain it from another source. Here, however, the information in the
original report goes to the essence of the arson charges. Finally, we note
that our decision on the qualified immunity issue is without prejudice to
any of the individual appellees seeking qualified immunity on remand.
Perhaps the factual predicate for the defense may change.

Albright, however, casts doubt on the holding of cases like Lee by suggesting that a plaintiff bringing a malicious prosecution claim must allege a claim based on explicit constitutional text, "not the more generalized notion of substantive due process." 510 U.S. at 273, 114 S. Ct. at 813 (citations omitted). Although we addressed a post-Albright malicious prosecution claim in Hilfirty v. Shipman, 91 F.3d 573, the only relevant issue before us in that case was whether a grant of nolle prosequi satisfied the common law requirement that the prosecution end in the plaintiff's favor. See id. at 579. Similarly, in Montgomery v. DeSimone, No. 97-5179 (3d Cir. Oct. 16, 1998), we addressed only the absence of probable cause element of malicious prosecution claims. Thus, this case is our first occasion to consider Albright's holding that section 1983 malicious prosecution claims must show more than a substantive due process violation.

Albright involved a baseless drug charge. See 510 U.S. at 268, 114 S.Ct. 810. After learning that a warrant had issued for his arrest, Albright surrendered to the authorities and was released after posting a bond. See id. An Illinois court later dismissed the charges against him for failing to state an offense under Illinois law. See Albright, 510 U.S. at 269, 114 S. Ct. at 810. Albright then sued the police officer who had obtained the arrest warrant under section 1983, alleging that the officer had deprived him of his Fourteenth Amendment right to be free from prosecution except upon probable cause. See id. The Court of Appeals for the Seventh Circuit dismissed the suit on the ground that Albright had failed to show incarceration, loss of employment, or some other "palpable consequence" caused by the prosecution. Albright, 510 U.S. 269-70, 114 S. Ct. at 811 (citations omitted).

Writing for a four-member plurality, Chief Justice Rehnquist affirmed the dismissal and held "that substantive due process, with its `scarce and open-ended' `guideposts' [could] afford [Albright] no relief." Albright, 510 U.S. at 275, 114 S.Ct. at 814 (citations omitted). In reaching this conclusion, Chief Justice Rehnquistfirst noted that Albright claimed neither that he was denied procedural due process guaranteed by the Fourteenth

9

Amendment nor that he suffered a violation of his Fourth Amendment rights. Rather, Albright's claim was limited to the narrow issue of his substantive due process right to be free from a prosecution without probable cause. See Albright, 510 U.S. at 271, 114 S. Ct. at 812. Upholding the district court's dismissal, Chief Justice Rehnquist announced "[w]here a particular amendment `provides an explicit textual source of constitutional protection' against a particular sort of government behavior, `that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.' " Albright, 510 U.S. at 273, 114 S.Ct. at 813 (quoting Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1870 (1989). Although the Court did not address the merits of a Fourth Amendment argument because Albright had not raised such an argument in his petition for certiorari, it left open the possibility that Albright could have succeeded if he had relied on the Fourth Amendment. See Albright, 510 U.S. at 275, 114 S.Ct. at 813-14. As several courts have noted, the Supreme Court's failure to rule on the merits of a Fourth Amendment claim, as well as the splintered views on the constitutional implications of malicious prosecution claims expressed in the various concurrences, has created great uncertainty in the law. See Taylor v. Meacham, 82 F.3d 1556, 1561 n.5 (10th Cir. 1996) (stating that "Albright muddied the waters rather than clarified them"); Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir. 1996) (referring to the "Albright minefield").

By stating that "the accused is not entitled to judicial oversight or review of the decision to prosecute," Albright implies that prosecution without probable cause is not, in and of itself, a constitutional tort. 510 U.S. at 274, 114 S.Ct. at 813 (internal quotations omitted).5 Instead, the constitutional violation is the deprivation of liberty accompanying the prosecution. Thus, as the Court of Appeals for the Second Circuit stated in a post-Albright

_____

5. Justice Stevens strongly disagreed with this point in his dissent. See Albright, 510 U.S. at 291,114 S. Ct. at 822. He wrote that initiating a prosecution without the equivalent of probable cause invoked enough liberty concerns to violate the Due Process Clause of the Fourteenth Amendment. See Albright, 510 U.S. at 294-96, 114 S. Ct. at 823-24.

decision, a plaintiff asserting a malicious prosecution claim must show "some deprivation of liberty consistent with the concept of `seizure.' " Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995). The district court was therefore correct in focusing on the seizure issue in evaluating Gallo's claim.6

2. Was Gallo seized?

Because under the common law, the tort of malicious prosecution concerns "perversion of proper legal procedures," Gallo must show that he suffered a seizure as a consequence of a legal proceeding. See Singer, 63 F.3d at 116-17. In this case, the legal proceeding was the indictment, and Gallo's post-indictment liberty was restricted in the following ways: he had to post a $10,000 bond, he had to attend all court hearings including his trial and arraignment, he was required to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania. Although it is a close question, we agree with Gallo that these restrictions amounted to a seizure.

Relying on the common law understanding of the purpose of bail, Justice Ginsburg explained in her concurrence in Albright that "the difference between pretrial incarceration and other ways to secure a defendant's court attendance [is] a distinction between methods of retaining control over a defendant's person, not one between seizure and its opposite." 510 U.S. at 278, 114 S. Ct. at 815. Thus, although recognizing that a defendant who is incarcerated pending trial suffers greater deprivation than one released on bail, Justice Ginsburg concluded that even the latter

_____

6. In fact, by suggesting that malicious prosecution in and of itself is not
a harm, Albright also suggests that a plaintiff would not need to prove all
of the common law elements of the tort in order to recover in federal
court. For instance, if the harm alleged is a seizure lacking probable
cause, it is unclear why a plaintiff would have to show that the police
acted with malice. Justice Ginsburg hints at this point in her
concurrence in Albright, when she writes that the constitutional tort
authorized by section 1983 "stands on its own, influenced by the
substance, but not tied to the formal categories and procedures, of the
common law." Albright, 510 U.S. at 277 n.1, 114 S. Ct. at 815 n.1.

defendant is seized. See Albright, 510 U.S. at 279, 114 S.Ct. at 815-16. She wrote: "Such a defendant is scarcely at liberty; he remains apprehended, arrested in his movements, indeed `seized' for trial, so long as he is bound to appear in court and answer the state's charges." Albright, 510 U.S. at 279, 114 S.Ct. at 816. We find this analysis compelling and supported by Supreme Court case law.[7]

Supreme Court decisions provide that a seizure is a show of authority that restrains the liberty of a citizen, see, e.g. California v. Hodari D., 499 U.S. 621, 625-27, 111 S.Ct. 1547, 1550-51 (1991), or a "government termination of freedom of movement intentionally applied." County of Sacramento v. Lewis, 118 S. Ct. 1708, 1715 (1998). The case law also shows that an actual physical touching is not required to effect a seizure. See Hodari D., 499 U.S. at 626, 111 S.Ct. at 1551.

Additionally, the Supreme Court has clarified that seizures can be of different intensities. Thus, whereas an arrest that results in detention may be the most common type of seizure, an investigative stop that detains a citizen only momentarily also is a seizure. See Terry v. Ohio, 392 U.S. 1, 16-18, 88 S.Ct. 1868, 1877-78 (1968). Terry demonstrates that the legal distinction between an arrest and an investigative stop is not that one is a seizure and the other is not, but that the police may be able to execute a stop based on circumstances not rising to the level of probable cause for an arrest. See 392 U.S. at 20 n.16, 88 S.Ct. at 1879 n.16. This analysis suggests that the restrictions imposed upon Gallo would qualify as a seizure, even though they did not amount to a full blown arrest.

When he was obliged to go to court and answer the charges against him, Gallo, like the plaintiff in Terry, was brought to a stop. This process may not have the feel of a

_____

7. At least two other members of the Court appeared to agree with Justice Ginsburg's understanding of the concept of seizure. See Albright, 510 U.S. at 290, 308, 114 S. Ct. at 822, 830 (Souter J., concurring) (suggesting his agreement by indicating that movement is restrained when "seizure occurs or bond terms are imposed"); (Stevens, J. dissenting) (explicitly agreeing with Justice Ginsburg's analysis on this point).

seizure because it is effected by authority of the court, not by the immediate threat of physical force. Force, however, lies behind the court's commands as it lies behind the policeman's "Stop." Gallo's physical motion was subjected to authority that had the effect of making him halt. In the present state of our law, it is difficult to distinguish this kind of halt from the exercise of authority deemed to be a seizure in Terry.

The Supreme Court's ruling that release on personal recognizance satisfies the "in custody" provision of the federal habeas corpus statute also suggests that the restrictions imposed upon Gallo should qualify as a seizure. See Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 300-01, 104 S.Ct. 1805, 1809-10 (1984). Although the Supreme Court has not held that the definition of"in custody" parallels the definition of seizure, the Court's construction of the term is relevant given that both seizure and custody concern governmental restriction of the freedom of those suspected of crime. In ruling that release on personal recognizance qualifies as "custody," the Court recognized that bail restrictions on travel, as well as mandatory attendance at court hearings does restrain liberty, particularly because failure to obey, or failure to appear, constitutes a criminal offense under state law. See Lydon, 466 U.S. at 301, 104 S.Ct. at 1809.

Our precedent, as represented by Lee v. Mihalich, also suggests that we should find that Gallo was seized. Although, as we explained above, Albright places into doubt Lee's conclusion that alleging the common law elements of malicious prosecution is enough to show a constitutional violation under section 1983, Lee itself represents a broad approach regarding bringing malicious prosecution claims in federal court. Given that the Supreme Court's decision in Albright does not determine conclusively what kinds of Fourth Amendment violations would be actionable under section 1983, we would remain closest to our own precedent by adopting a broad approach in considering what constitutes a seizure.

Further, we note that the only other court of appeals, of which we are aware, to examine the issue raised in this appeal has ruled that pretrial restrictions on travel and

13

required attendance at court hearings constitute a seizure. See Murphy v. Lynn, 118 F.3d 938, 945 (2d Cir. 1997). In its reasoning, Murphy relied on Justice Ginsburg's concurrence in Albright, as well as the conclusion that restriction of the right to travel should have Fourth Amendment implications. See id. at 944-47; see also Britton v. Maloney, 981 F. Supp. 25, 37-38 (D.Mass. 1997) (adopting Justice Ginsburg's theory and finding required attendance at court hearings enough to constitute a seizure). Although some courts of appeals have expressed doubts about theories of seizure like Justice Ginsburg's, none appear to have rejected such a theory in the context of a malicious prosecution claim. See Riley v. Dorton, 115 F.3d 1159, 1162 (4th Cir. 1997) (rejecting Justice Ginsburg's theory in context of claim alleging excessive force post-arrest); Reed v. City of Chicago, 77 F.3d at 1053-54 (rejecting malicious prosecution claim because plaintiff had failed to show any improper influence or knowing misstatements by the police); Whiting v. Traylor, 85 F.3d 581, 584 (11th Cir. 1996) (expressing doubt about Justice Ginsburg's theory but declining to reach a final decision on its merits); Wilkins v. May, 872 F.2d 190, 193 (7th Cir. 1989) (rejecting idea of continuous seizure in claim of excessive force applied post-arrest).

The appellees argue, however, and the district court agreed, that the restrictions imposed upon Gallo are simply not significant enough to constitute a seizure. In stating this argument, the appellees make two specific claims. First, they contend that Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854 (1975), forecloses Gallo's claim. Second, they argue that an individual free to move about in his own state cannot be "seized." We address each argument in turn.

In Gerstein, the Supreme Court concluded that when an individual is prosecuted based on an information, a judicial determination of probable cause is a "prerequisite to [an] extended restraint of liberty following arrest." 420 U.S. at 114, 95 S.Ct. at 863. Additionally, the Court clarified that the probable cause requirement applies only to "significant" restraints on liberty and specifically stated that merely appearing at trial does not qualify as "significant." Gerstein, 420 U.S. at 124-25 & n.26, 95 S.Ct. at 868-69 & n.26. The

14

appellees claim that the restrictions imposed on Gallo similarly do not qualify as significant, and thus cannot amount to a seizure.

In our view, however, Gerstein's holding does not apply in this case. Gerstein did not address specifically the definition of a seizure, and Supreme Court cases have not equated a seizure with a significant deprivation of liberty. Second, not all seizures require probable cause; for instance, in Terry the Supreme Court suggested that an investigative stop could be executed based on circumstances not constituting probable cause. Thus, while Gerstein may hold that only those seizures that amount to a significant liberty deprivation must be proceeded by a probable cause determination, it does not hold that only those liberty restrictions that require probable cause are seizures.

Next, we acknowledge, as suggested by the district court, that it may seem anomalous to consider an individual who is free to move about in his own home state as "seized." Indeed, Supreme Court cases concerning seizure generally involve restricting an individual's movement to a small area. Thus, an arrested person is confined to a cell, a station house, or a police car. Moreover, a person subject to a Terry stop does not feel free to move past the police officer effectuating the stop. It is therefore conceptually more difficult to view someone restricted to the boundaries of New Jersey and Pennsylvania as "seized."

We do not view this difficulty, however, as fatal to Gallo's claims. Importantly, the constraints on Gallo's freedom were not limited to restrictions on his travel, he was also compelled to attend all court hearings. An individual detained briefly by the police, even if frisked in the process, may be viewed as suffering no greater a deprivation of liberty than an individual like Gallo, whose liberty was restrained through travel restrictions and mandatory court appearances over an eight and a half month period. While a Terry stop may be upsetting, it is fleeting, whereas Gallo's liberty was constrained in multiple ways for an extended period of time. Thus, we conclude that the limited scope of the seizure here is germane to damages not liability.

In reaching our result we recognize that the district court observed that accepting Gallo's position would result in

15

constitutionalizing the tort of malicious prosecution. The court is correct that if the facts of this case amount to a seizure, then nearly all individuals alleging malicious prosecution will be able to sue under section 1983 because travel restrictions and required attendance at court hearings inhere in many prosecutions. Further, the concern of constitutionalizing a common law tort is legitimate given the Supreme Court's repeated reminder that section 1983 permits recovery only for rights guaranteed by the constitution, not the common law. See Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305-06, 106 S.Ct. 2537, 2542 (1996).

But the fact that many plaintiffs alleging malicious prosecution now may be able to bring suit under section 1983 does not, in and of itself, justify rejecting Gallo's seizure claims. First, the Supreme Court has recognized that "[i]n some cases, the interests protected by the common law of torts may parallel closely the interests protected by a particular constitutional right." Carey v. Piphus, 435 U.S. 247, 258, 98 S.Ct. 1042, 1049 (1978). Second, in a sense, a claim of malicious prosecution against public officials always has had constitutional ramifications. After all, a malicious prosecution is not an ordinary tort. Instead, a claim of malicious prosecution brought under section 1983 or Bivens alleges the abuse of the judicial process by government agents. Such a claim directly implicates at least one of the interests protected by the Fourth Amendment: preventing misconduct in the criminal context. See Terry, 392 U.S. at 12, 88 S.Ct. at 1875.

IV. CONCLUSION

We conclude that the combination of restrictions imposed upon Gallo, because they intentionally limited his liberty, constituted a seizure. We therefore will reverse the district court's order of August 15, 1997, granting the motion to dismiss and the motion for partial summary judgment and will remand the matter to the district court for further proceedings consistent with this opinion.

16

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17