**Anneke FREEMAN, Plaintiff,**

v.

**Trooper Mark H. MURRAY; Harriet L. Earnest, CPA; Marsch Kellogg, American Legion Post; and County of Pike, Defendants.**

No. 3:99CV2179.

United States District Court, M.D. Pennsylvania.

Aug. 31, 2001.

---

James A. Swetz, Cramer, Swetz & Mc-Manus, Stroudsburg, PA, for plaintiff.

Daniel J. Doyle, Harrisburg, PA, for Mark H. Murray, defendant.

Robin B. Snyder, Marshall, Dennehey, Warner, Coleman & Goggin, Scranton, PA, for Harriet L. Earnest, defendant.

Albert M. Saltz, Veronica Winter Saltz, Nolte, Brodoway & Saltz, Philadelphia, PA, for Marsch-Kellog American Legion Post.

Harry Thomas Coleman, Abrahamsem, Moran & Conaboy, P.C., Scranton, PA, for County of Pike, defendant.

### *MEMORANDUM*

MUNLEY, District Judge.

Before the court for disposition are the motions for summary judgment filed by the defendants in the instant case. The plaintiff is Anneke Freeman, and the defendants are Trooper Mark H. Murray, Harriet L. Earnest, CPA, Marsch Kellogg American Legion Post, and County of Pike. The matter is ripe for disposition having been fully briefed and argued.

### Background

As alleged in the plaintiff's complaint, the facts are as follows: Plaintiff was an employee of Defendant Marsch–Kellogg American Legion Post. On or about March 12, 1997, a representative of the American Legion contacted Defendant Trooper Mark H. Murray and requested that an investigation into financial shortages of the American Legion Post be conducted. The American Legion had retained Defendant Harriet L. Earnest, CPA to examine its financial records. She determined that the money was missing from the American Legion's "ticket" money, that is ticket money earned by the American Legion from the sale of raffle tickets from ticket machines. On or about June 24, 1998, Defendant Mark H. Murray filed a criminal complaint against plaintiff contending that she was responsible for keeping the ledger on the ticket money during the period in question. Plaintiff was arrested and required to post bond.

A copy of the criminal complaint was not given to the district attorney for approval or disapproval before it was filed. A preliminary hearing was scheduled, but prior to the time set for the hearing, the district attorney's office concluded that the criminal complaint was not supported by sufficient evidence to proceed with the prosecution, and all charges were withdrawn.

Plaintiff filed the instant action under the Federal Civil Rights Act, 42 U.S.C. §§ 1983 and 1988 claiming to have suffered from humiliation, damage to reputation, emotional distress, mental anguish, a loss of life's pleasures, diminished income and loss of earning capacity. She brought claims for malicious prosecution, false arrest and abuse of process against Defendants Earnest, and the American Legion.

A claim was also brought against Earnest alleging negligence and professional negligence. Further, plaintiff brought a claim against the County of Pike claiming that its policy custom and/or official decision of not requiring that criminal complaints be approved by the district attorney violates her constitutional rights. Now all defendants have moved for summary judgment.

**Standard of Review**

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". *See Knabe v. Boury*, 114 F.3d 407, 410 n. 4 (3d Cir.1997) (citing Fed.R.Civ.P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In the instant case, all defendants have moved for summary judgment raising various different issues. We shall address them all separately beginning with Defendant Mark H. Murray.

**I. Defendant Mark Murray**

Defendant Mark Murray has moved for summary judgment on the following counts: malicious prosecution, false arrest and abuse of process. In addition, he makes a general claim that he is entitled to qualified immunity for his actions. We will address these issues *seriatim*.

A. Malicious prosecution

As noted above, the plaintiff has brought a malicious prosecution claim against Defendant Mark Murray. Defendant Murray now moves to have judgment entered in his favor on this claim for the following reasons: 1) Plaintiff Freeman was never seized within the meaning of the Fourth Amendment; and 2) probable cause existed for the charges and no evidence has been presented to demonstrate that the charges were brought maliciously or for a purpose other than bringing plaintiff to justice.

To establish a *prima facie* case of a section 1983 malicious prosecution claim, the plaintiff must demonstrate the elements of common law malicious prose-

cution, including: 1) the defendants commenced a criminal proceeding; 2) without probable cause; 3) with malice or for reasons other than to bring the party to justice and 4) the proceedings were terminated in favor of the plaintiff. *Merkle v. Upper Dublin School District*, 211 F.3d 782, 791 (3d Cir.2000). Under Third Circuit Court of Appeals law, the plaintiff must also establish that he was seized within the meaning of the Fourth Amendment. *Gallo v. City of Philadelphia*, 161 F.3d 217 (3d Cir.1998)

Defendant Murray's first argument is that the plaintiff was never seized within the meaning of the Fourth Amendment. Therefore, judgment in his favor on the malicious prosecution claim is appropriate. We disagree.

■■■ The Third Circuit Court of Appeals has noted that: "Supreme Court decisions provide that a seizure is a show of authority that restrains the liberty of a citizen, or a government termination of freedom of movement intentionally applied. The case law also shows that an actual physical touching is not required to effect a seizure." *Gallo v. City of Philadelphia*, 161 F.3d 217, 223 (3d Cir.1998). The court also noted that for malicious prosecution the plaintiff must establish that the seizure was the consequence of a legal proceeding. *Id.* at 222.

In *Gallo,* the plaintiff suffered the following deprivation of liberty: he had to post a $10,000.00 bond, he was required to attend all court hearings including trial and arraignment and was required to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside of New Jersey. *Id.*

■ Here it is uncontradicted that the plaintiff surrendered pursuant to an arrest warrant; therefore, the legal process requirement is met. She had her liberty restricted in the following manner: she surrendered pursuant to an arrest warrant and attended her arraignment, she was required to post $500.00 bond, and she was further required to attend all proceedings pursuant to Pa.R.Crim.Pro. 526.[1] *Gallo,* controls and we find that the plaintiff had her liberty sufficiently restricted to be considered "seized" under the Fourth Amendment. *See also Williams v. Fedor,* 69 F.Supp.2d 649, 670 (M.D.Pa.1999) (holding that the requirements inherent in the criminal process—that the accused submit to processing and appear in court as required—are sufficient restraints on liberty to constitute a seizure).

Defendant Murray cites *Bristow v. Clevenger,* 80 F.Supp.2d. 421 (M.D.Pa.2000) in support of his position that no seizure occurred. That case, where no seizure was found, is distinguishable from the instant case. In *Bristow,* the plaintiff was released on her own recognizance, and the only proceedings she was required to attend were a pretrial conference and a hearing where her record was expunged. *Id.* at 430. Accordingly, we cannot grant judgment to Defendant Murray on the basis that the plaintiff was not seized.

As set forth briefly above, the remaining elements of a malicious prosecution claim are: 1) the defendants commenced a criminal proceeding; 2) without probable cause; 3) with malice or for reasons other than to bring the party to justice and 4) the proceedings were terminated in favor of the plaintiff. Defendant Murray concedes that the a criminal proceeding was commenced and that it was terminated in plaintiff's

1. Rule 526 provides in pertinent part: "In every case in which a defendant is released on bail, the conditions of the bail bond shall be that the defendant will … appear at all times required until full and final disposition of the case …"

favor. He contends, however, that probable cause existed for the arrest and no malice was present. We shall only discuss the probable cause issue as we find it to be dispositive.

**Probable Cause**

■ With regard to the quantum of evidence that is necessary to establish probable cause for arrest, the United States Supreme Court has stated as follows:

Both the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents. *See Cupp v. Murphy,* 412 U.S. 291, 294–295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973); *Ex parte Bollman,* 8 U.S. 75, 4 Cranch 75, 2 L.Ed. 554 (1807); *Ex parte Burford,* 7 U.S. 448, 3 Cranch 448, 2 L.Ed. 495 (1806). The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.' *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). *See also Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1949). This standard, like those for searches and seizures, represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime. 'These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their

part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' *Id.,* at 176, 69 S.Ct. at 1311.

*Gerstein v. Pugh,* 420 U.S. 103, 111–12, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

■ In the instant case, the plaintiff's arrest was made pursuant to an arrest warrant issued by a district magistrate judge who found that probable cause existed for the arrest. The fact that a magistrate judge issued an arrest warrant does not shelter the police officer from liability under section 1983 if plaintiff can establish that: 1) the police officer knowingly and deliberately, or with reckless disregard for the truth made false statements or omissions that create a falsehood in applying for the warrant; and 2) such statements or omissions were material or necessary to finding of probable cause. *Wilson v. Russo,* 212 F.3d 781, 786 (3d Cir.2000). Plaintiff claims that the defendant made misleading statements as well as omissions in the affidavit of probable cause. We shall address each separately.

**A. Omissions**

■ Plaintiff claims Defendant Murray improperly omitted a series of matters from the affidavit of probable cause. When drafting an Affidavit of Probable Cause, a police officer cannot knowingly and deliberately or with a reckless disregard for the truth make any false statements or omissions that create a falsehood. An omission is made with reckless disre-

gard where the officer leaves out anything that a reasonable person would have known was the kind of matter that the judge would want to know in determining whether probable cause exists for the arrest. *Wilson v. Russo,* 212 F.3d 781, 786–88 (3d Cir.2000).

First, plaintiff claims that Murray should have included in the affidavit that Freeman claimed to have stopped paying herself out of the ticket money account. We cannot find that this matter was something the judge would have wanted to know. It is tantamount to a claim of innocence of the crime and would have been of little probative value to the judge.

Plaintiff also complains that Sterling Reese informed Defendant Murray that Freeman had been authorized to take the ticket money. Defendant Murray did not report this in the Affidavit of Probable Cause, which plaintiff claims was a material omission. It is plaintiff's position that Defendant Murray actually admits to having the knowledge and not reporting it. However, a review of Murray's deposition reveals that he claims to have spoken to Reese after the charges were filed, and therefore, after the Affidavit of Probable Cause was authored. Murray, Depo. at 54. Accordingly, we find no merit to the plaintiff's claim.

In a like manner, the plaintiff contends that Murray should have placed in the Affidavit of Probable Cause that the accountant, Earnest, reported to him that various problems that may have existed in proving that money had been taken by Freeman from the ticket proceeds. For example, some unsold tickets were removed from machines and the lines of access to the records and money were not clearly delineated. However, once again, no evidence has been presented that Murray knew of these issues when he authored the Affidavit of Probable Cause. Addition-

ally, the magistrate judge would likely have found such information to be of little probative value because despite any problems that may have existed it was nonetheless the accountant's opinion that a shortage occurred each week with the ticket money.

## B. Misleading Statements

In addition to omissions, plaintiff avers that the Affidavit of Probable Cause contained misleading statements. First, plaintiff claims that the Affidavit contained a misstatement where it claims that during the time in question, she was the one responsible for keeping the ticket money ledger. In fact, according to the plaintiff, the ledger was kept by three different people as evidenced by the existence of three distinct handwritings. Defendant Murray claims that Shearer told him that Freeman was in charge of the ledger and there is no proof that he (Murray) knew that others were also responsible for the book. We are in agreement with Defendant Murray. He stated in his incident report that Freeman was in charge of the book work for the ticket machines. (Incident Report at 4). This information apparently came from Shearer who stated at his deposition that Freeman was in charge of the books. (Shearer Dep. at 30). Accordingly, because this was the information that Murray had, we cannot fault him for reporting it in the Affidavit of Probable Cause. No evidence has been presented that Murray was aware of the fact that the book contained three different handwritings. In fact in Murray's report he states that Earnest told him that all entries with the exception of a couple of weeks, appeared to have been made by the same person. (Incident Report at 12). This information is what he reported in his Affidavit and no evidence has been presented that Earnest told him anything dif-

ferent. Moreover, no evidence has been presented that Murray knew that when plaintiff began keeping the records in the book she put in the disclaimer that she would not be responsible for other mistakes.

Next, plaintiff claims that the following statement from the Affidavit of Probable Cause is misleading:

> EARNEST [the accountant retained by the American Legion Post] advised that $200 a week was missing from the "ticket" money. The shortages occurred on a weekly basis from 01/01/95 through 06/30/96. The "ticket" money proceeds are documented in a ledger book and EARNEST advised that all entries, with the exception of a couple of weeks worth of entries, appeared to have been made by the same person. The person identified as having been responsible for keeping the ledger on the ticket money was the defendant.

> On 02/02/98 affiant interviewed defendant [the instant plaintiff] relative to the weekly shortages in the ticket proceeds. Defendant advised that she had been taking $150 a week as payment for taking care of the ticket ledger. Defendant advised that she was accounting for the $150 in cash payouts, winning tickets paid out, in the ticket ledger book. Defendant advised that a Michael DINAPOLI gave her permission to take the $150 a week and to document it in the ledger book as a cash payout. Defendant advised the James COLBERT was possibly present when DINAPOLI gave her permission to take the $150 a week.

> DINAPOLI and COLBERT deny *ever* having given the defendant permission to take any money from the ticket proceeds, prior to or after accurately documenting the proceeds in the ledger book.

Defendant Mark Murray's Affidavit of Probable Cause (emphasis in original).

Plaintiff claims that this portion of the Affidavit of Probable Cause is misleading because, while Freeman did admit to taking the $150.00 a week from the ticket money, she informed Defendant Murray that that practice ended in August of 1994 when she was officially put on the American Legion's payroll as a salaried employee.[2] She never stated that she made such deductions in 1995 or 1996. However, it was for these years that she was ultimately arrested. Plaintiff claims that Murray took her statement and made it seem as if she had admitted to taking the money during January 1995 through June 1996. The question then becomes, what did Freeman actually tell Murray and did he skew the facts in his Affidavit of Probable Cause to make it appear that she admitted more than she did?

We find a question of fact exists as to what plaintiff actually told the defendant. He claims that he interviewed Freeman in 1998, and she stated that she had stopped the practice "a couple of years" previous— thus, placing her actions in the relevant time frame. Murray Dep. at 24–25. Freeman claims in her brief that she actu-

---

**2.** The manner in which the money was taken by Freeman to pay herself is as follows: Every day, the American Legion Post would provide the bartender with a pouch containing $1300.00 for paying out on winning tickets obtained from the Legion's ticket machine. Winning tickets were placed in the pouch, and at the end of the day, the remaining pouch money was compared with the winning tickets to ensure that no money was unaccounted for. Once the amount was verified, the winning tickets were discarded. A record of the ticket payouts was maintained in a ledger book. Freeman took the $150.00 pay from the ticket money and reflected it not as pay, but as a payout for winning tickets. Freeman Dep. at 39–42.

ally told Murray that she went on the books specifically in August 1994. Freeman Dep. at 66–68, 73–75. Her deposition testimony states as follows:

Q. But do you remember specifically saying that you became a paid employee on the books in 1994?

A. No.

Q. Do you remember specifically what you did say to him about that?

A. I did say to Mr. Murray that we— that I used to get paid $150.00. . . .

Q. Right.

A. . . . for taking care of the tickets and Mr. Murray smiled and said, "Okay. Then can you verify that by somebody," and that's when I told him Mr. Bennett and Mr. Colbert and off the top of my head I couldn't think of anybody else and [Murray] said that's fine and then I never spoke with [Murray] again until I saw him at the magistrate's.

. . . . .

Q. . . . [B]ut do you recall specifically what you said about when you were being paid off the books?

A. I said that I used to get paid $150.00 and he did not ask me for a date.

Q. The last sentence of that paragraph said, "Freeman related that she became a paid employee on the books about two years ago." Are you saying you can absolutely say that you did not say that?

A. I did not say that because we had been on the books since 1994.

Plaintiff's Depo. at 74–75.

While the plaintiff's testimony is not quite clear on the point, in examining this evidence in the light most favorable to her, we find the existence of a factual question with regard to what Murray knew when he drafted the Affidavit of Probable Cause. There is a possibility, albeit slight, that if the jury believes the plaintiff's version of the facts that they will conclude that the Trooper skewed the facts in the Affidavit improperly against the plaintiff. The existence of this question of fact will not hamper our decision on the summary judgment motion because of our following analysis.

## C. Materiality

In the situation where omissions and misrepresentations are present the court must determine whether they were material. To determine materiality, "we excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789. As set forth above, the only possible question of fact is whether the Affidavit of Probable Cause misrepresented the facts so that it appeared that Freeman admitted to taking the money. We find, however, that even if Defendant Murray had exaggerated the facts, probable cause would nonetheless have been present. If he put in a statement that Freeman admits to taking money in 1994, but claims to have stopped in August of 1994 when she was put on the payroll, it would still be uncontested that the Trooper believed that money was missing from the ticket money account. Freeman had at some point taken money out of this account ticket money. Therefore, she was aware of what to do in order to take money and make it appear as if none was missing. The people who she claimed authorized her to pay herself denied that they had. In addition, he had information that Freeman was the person in charge of the ticket money.

In conclusion, we find that of all the issues the plaintiff raises, there is only one on which the jury could possibly rule in her favor. Even if the Affidavit of Probable Cause were amended to correct that

alleged misrepresentation, probable cause nonetheless existed for the plaintiff's arrest. Accordingly, Defendant Murray had sufficient facts on which a prudent man could conclude that Freeman was committing a crime, and the plaintiff's claim for malicious prosecution is not adequately supported by the record. Summary judgment on the issue of malicious prosecution will therefore be granted for Defendant Murray and against Plaintiff Freeman.

### B. False Arrest

 Plaintiff also asserts a false arrest claim against Defendant Murray. In order to prevail on her false arrest claim plaintiff would have to establish that probable cause did not exist for her arrest. "The proper inquiry in a section 1983 claim based on false arrest ... is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman v. Township of Manalapan,* 47 F.3d 628, 634 (3d Cir.1995) (quoting *Dowling v. City of Phila.,* 855 F.2d 136, 141 (3d Cir.1988)). Because we have concluded that probable cause did exist for the plaintiff's arrest, summary judge is proper in favor of Trooper Murray on the false arrest claim.

### C. Abuse of Process

 Plaintiff further asserts a claim for abuse of process. Abuse of process occurs when a party employs the legal process for an unlawful purpose, a purpose that is not the intended purpose of the law. In other words an abuse of process is a perversion of the process for example if one is arrested for the purposes of extorting money from him. *Jennings v. Shuman,* 567 F.2d 1213, 1217 (3d Cir.1977).

 In the instant case, plaintiff alleges that the process was abused because it was used to obtain Freeman's cooperation in possible charges brought against Michael DiNapoli. We find that judgment should be entered in favor of Defendant Murray on this claim. It is an accepted practice for prosecutors to negotiate with defendants and to offer more lenient treatment to one defendant in order to provide incriminating evidence against another. *Williams v. Fedor,* 69 F.Supp.2d 649, 673 n. 26 (M.D.Pa.1999). Accordingly, judgment shall be granted to Defendant Murray on the plaintiff's abuse of process claim.

### D. Qualified Immunity

Defendant Murray also raises the issue of qualified immunity. We need not address this issue, however, as we have determined that judgment should be entered in Murray's favor on all of the claims against him.

## II. Defendant Harriet Earnest

Plaintiff has also sued Harriet L. Earnest, CPA, the accountant hired by Marsh–Kellogg American Legion Post to examine the Post's financial records. Plaintiff has sued Earnest in Count III for false arrest, abuse of process and malicious prosecution. Count V alleges a common law action for negligence and professional negligence. Earnest has moved for summary judgment on all claims. For the following reasons, Defendant Earnest's motion for summary judgment will be granted.

### A. Negligence and Professional Negligence

Initially, Defendant Earnest attacks the plaintiff's claims of common law negligence and professional negligence. Earnest raises numerous issues regarding the negligence claims, but we shall only address one as we find it to be dispositive.

In cases involving negligence by professionals, the law in Pennsylvania provides that once the defendants present averments that their conduct was not negligent, the burden of production shifts to the plaintiff who must provide evidence that would create a genuine issue of material fact as to the standard of care. The plaintiff must do so with expert testimony in order to avoid involuntary dismissal. In other words, the plaintiff has the burden to present expert testimony to establish that the defendant's actions failed to meet the appropriate standard of care. *Gans v. Mundy*, 762 F.2d 338, 343 (3d Cir.1985) (interpreting Pennsylvania law) *cert. denied* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

In the instant case, Defendant Earnest has asserted factual allegations that she was not negligent. The plaintiff has not provided any expert testimony at all to demonstrate that she was in fact negligent. Judgment shall accordingly be granted to Defendant Earnest on the common law negligence and professional negligence claims.

### B. Common Law Action for Malicious Prosecution

Plaintiff also seeks to hold Defendant Earnest liable on a theory of malicious prosecution. The law provides that a private person, such as Defendant Earnest, is subject to liability for malicious prosecution if (a) she initiates or procures the institution of criminal proceedings without probable cause and primarily for a purpose other than that of bringing the offender to justice, and (b) the proceedings have terminated in favor of the accused. *Tomaskevitch v. Specialty Records Corp.*, 717 A.2d 30, 33 (Pa.Cmwlth.1998). Criminal proceedings are deemed initiated where a person makes a charge before a public official or body in such a form as to require the official or body to determine whether process shall or shall not be issued against the accused. *Id.*

The court stated:

[G]iving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not.... If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

*Id.* at 34 quoting Restatement (Second) of Torts § 653, comment g.

That simply is not the situation in the instant case. The plaintiff has failed to produce evidence upon which a jury could find that Defendant Earnest knowingly provided false information to Defendant Murray. Moreover, we have found above that probable cause for the arrest did exist. Accordingly, judgment shall be granted to Earnest with respect to the malicious prosecution claim.

### C. Common Law Action for Abuse of Process and False Arrest

For the reasons set forth above dealing with Defendant Murray, summary judgment shall be granted in Defendant Earnest's favor on the Abuse of Process and False Arrest claims.

### III. Section 1983 claims with respect to Defendant Earnest and Defendant American Legion

█ The remaining claims against Defendant Earnest and the claims against the American Legion Post involve allegations of violation of section 1983. To establish a claim under section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Second, the conduct must deprive the complainant of rights secured under the Constitution or federal law. *Sameric Corp. of Delaware, Inc. v. City of Philadelphia,* 142 F.3d 582, 590 (3rd Cir.1998).

In the instant case, Defendant Earnest claims that she was not a state actor. She is a private individual who was hired by a private entity to perform an audit. In a like manner, the American Legion argues that it merely hired Earnest to audit its records to determine whether a shortfall existed and then asked Trooper Murray to investigate the cause of the shortfall.

Contrariwise, plaintiff alleges that Defendants Murray, Earnest and agents, employees and/or officers of Marsch–Kellogg, American Legion Post, acted jointly and, in concert and/or in conspiracy with each other to violate her rights. Apparently the agents, employees and/or officers of the American Legion Post, who are unnamed in the complaint are: Thomas Shearer, the Post's finance officer, and James Colbert, Commander of the Post.

█ A person may be found to be a state actor when (1) he is a state official, (2) he has acted together with or has obtained significant aid from state officials, or (3) his conduct is, by its nature, chargeable to the state. *Angelico v. Lehigh Valley Hosp. Inc.,* 184 F.3d 268, 277 (3d Cir. 1999). In the instant case, the plaintiff claims that the defendants, including the state trooper, acted together in conspiracy,

and therefore, the private individuals can be held liable under section 1983. After a careful review, it is apparent that no conspiracy can be found.

Plaintiff explains her theory as follows: "Since Shearer, Earnest and Trooper Murray met and discussed the matter prior to the initiation of the prosecution against Freeman, a jury could infer that Murray, Shearer and Earnest discussed the theoretical nature of the loss, the Freeman disclaimer in the ledger, the fact that Freeman was a salaried employee on the American Legion Post's books after August of 1994, that there was *no* proof that Freeman received any of the ticket money during 1995–96 when she was an employee on the books, and that the handwriting in the ticket money ledger was made by three individuals. A jury could infer that the Affidavit of Probable Cause filed before the District Justice against Freeman was a product of their joint effort." Plaintiff's Brief in Oppo. to Earnest's Motion for Summary Judgment at 9 (emphasis in original).

Plaintiff finds the following evidence relevant to the conspiracy claim: Earnest testified at her deposition that there may have in fact been no loss in the ticket money, Earnest and Shearer were aware that plaintiff had placed a disclaimer in the ledger stating she would not be responsible for entries prior to a certain date, that plaintiff was a salaried employee after August 1994, and that the handwriting in the ledger was from three different people. Plaintiff argues that with all this information, the defendants were aware that plaintiff was not guilty of any crime and planned to have her falsely arrested to obtain her cooperation in prosecuting Michael DiNapoli who they believed was actually the perpetrator. We are unconvinced by plaintiff's argument.

The law with regard to conspiracy provides as follows:

> Under Pennsylvania law, a plaintiff must show that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. This showing may be proved by acts and circumstances sufficient to warrant an inference that the unlawful combination had been in point of fact formed for the purpose charged. While conspiracy may be proved by circumstantial evidence, the evidence must be full, clear and satisfactory.... Mere suspicion or the possibility of guilty connection is not sufficient, nor proof of acts which are equally consistent with innocence.

*Scully v. U.S. WATS, Inc.*, 238 F.3d 497, 516 (3d Cir.2001) (internal quotations and citations omitted).

Moreover, a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability. "Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant. Instead actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor." *In Re: Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d 781, 789 (3rd Cir.1999) (citations and internal quotation omitted).

The underlying torts in the instant action, upon which plaintiff alleges the conspiracy is based, are the claims for malicious prosecution, false arrest and abuse of process. At its most basic, the wrong the defendants were attempting to perpetrate was to use leverage of arrest and threat of prosecution to obtain plaintiff cooperation in the prosecution of DiNapoli. Regardless, there has been no evidence presented that after the arrest the defendants attempted to pressure the plaintiff to incriminate DiNapoli. Accordingly, no grounds exist to find that a conspiracy existed to violate the plaintiff's federal constitutional rights.

Even when viewed in the light most favorable to the plaintiff, there has simply been no evidence presented from which any kind of conspiracy could be inferred. First, the loss as determined by Defendant Earnest was not as theoretical as plaintiff claims. Earnest admitted that theoretically, there may have been no loss, but that does not change the fact that it was her opinion that a weekly loss did in fact occur. Secondly, there is no evidence in the record to indicate that Earnest had any interest in anybody being criminally charged. The facts which are undisputed demonstrate that Earnest determined there was a shortage and informed the Post and Trooper Murray, when he interviewed her. Moreover, she did not even name the plaintiff as the one likely responsible for the shortage.

In addition, the uncontradicted evidence establishes that the American Legion provided all information and records that Earnest requested to perform the audit. In fact plaintiff herself was the person responsible for providing the ledgers to Earnest. Pl.Dep. at 125–26. Plaintiff finds it suspicious that Thomas Shearer, a member of the American Legion Post, instructed Defendant Earnest not to speak to plaintiff's representatives. Apparently, however, this occurred after the criminal charges were filed and the instant lawsuit was contemplated.

Plaintiff claims that some kind of inconsistency appears in Shearer's testimony because he stated that plaintiff had control of the ticket money during 1995–96, but he also admitted that three individuals had made entries in the ledger during the 1995–96 concerning the ticket money. The

two statements are not contradictory. Having control over the money does not equate with making entries in the ledger. Regardless, plaintiff herself admits to making 70% of the entries in the ledger. Pl.Dep. 63–64.

Plaintiff also finds a discrepancy in that Shearer claims that he never knew that plaintiff was being investigated and did not know that she was going to be charged. Shearer Dep. at 17–18. However, plaintiff claims that Defendant Trooper Murray admitted that he discussed the institution of the prosecution with Shearer. This discrepancy supports some kind of inference that they were acting in conspiracy according to the plaintiff. We are unconvinced. Murray did state that he discussed charging the plaintiff, but he does not indicate that he discussed it prior to the initiation of the prosecution. Therefore, his statement is totally consistent with Shearer's testimony of what occurred. Even if a discrepancy did exist here, it simply would not be enough evidence upon which a jury could infer an illegal conspiracy.

Moreover, and perhaps more importantly, we have found above that Trooper Murray's actions did not violate the plaintiffs' rights. Probable cause existed for the plaintiff's arrest. Because the state actor cannot be held liable for violating the plaintiff's rights, we find that Defendant Earnest and the American Legion cannot be held liable as a conspirator with him to violate those rights. Accordingly, the defendants can not be found to have conspired to commit an unlawful act. Hence, for all of the above reasons, summary judgment will be granted for the defendants on the section 1983 claims.

## IV. County of Pike

Lastly, Defendant Pike County has filed a motion for summary judgment. Plaintiff claims that the County was liable for her arrest because it does not require police officers to obtain approval of the district attorney before filing criminal complaints and/or arrest warrant affidavits. We find no merit to the plaintiff's claim.

Pennsylvania law provides the following option for district attorneys: "The district attorney of any county may require that criminal complaints, arrest warrant affidavits, or both filed in the county by police officers, as defined in these rules, have approval of an attorney for the Commonwealth prior to filing." Pa.R.Crim.Pro. 507. The Comment to Rule 507 explains further. "To assume and exercise the charging function properly, the district attorney must have sufficient personnel and other resources to provide that an attorney for the Commonwealth is available 24 hours a day. Some counties may not have sufficient personnel and other resources. Therefore, the rule authorizes assumption of the charging function on a local option basis." The Pike County District Attorney at the time of the incident did not exercise the local option of Rule 507 because it was impractical to staff an attorney twenty-four hours per day, seven days a week, fifty-two weeks per year to approve criminal complaints, arrest warrant affidavits, or both, prior to filing. Affidavit of Charles F. Lieberman at ¶ 12. At the time, the district attorney's office employed "at most" four part-time assistant district attorneys. *Id.* at ¶ 11.

As is apparent, the rule is written with discretionary wording, the DA "may" require prior approval. In the instant case, the DA does not require prior approval of criminal complaints and arrest warrant affidavits except in homicide cases. We cannot find that the County violated the plaintiff's constitutional rights by choosing an option provided by state statute. For us to rule in favor of the plaintiff on this issue

would be tantamount to finding the state statute unconstitutional.

Regardless of whether the district attorney reviews the complaint and affidavit before its filing, the arrest still must be founded upon probable cause as determined by a district magistrate judge. *See* Pa.R.Crim.Pro. 513(a) ("No arrest warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority."). If someone is arrested and it is later determined that probable cause for the arrest did not exist, the arrestee has the remedies of filing a malicious prosecution or false arrest claim. In other words, the arrestee's rights are sufficiently protected by being able to bring an action for false arrest, malicious prosecution and abuse of process. No need exists for us finding that the Commonwealth's rules are unconstitutional because they provide the choice described above. Accordingly, judgment shall be granted for Defendant County of Pike.

**Conclusion**

In conclusion, we find that summary judgment should be granted in favor of all the defendants. Probable cause existed for the plaintiff's arrest even when all the "omissions" and "misrepresentations" that she claims were present are considered. Accordingly, Defendant Trooper Murray did not violate her rights, and it cannot be found either that Defendants Earnest, or the American Legion Post conspired with him to violate her rights. An appropriate order follows.

### *ORDER*

_____AND NOW, to wit, this 31st day of August 2001, it is hereby **ORDERED** as follows:

1) Marsch–Kellogg American Legion Post's motion for summary judgment [32–1] is **GRANTED;**

2) Defendant County of Pike's motion for summary judgment [33–1] is **GRANTED;**

3) Defendant Mark H. Murray's motion for summary judgment [37–1] is **GRANTED;**

4) Defendant Harriet L. Earnest's motion for summary judgment [39–] is **GRANTED;** and

5) The Clerk of Court is directed to close this case.